**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **RANDY JONES,** | ) | |
| **DON CARTER,** | ) | |
| **ROBERT WINTERS,** | ) | |
| **JOHN BOATFIELD** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | NO. _1:23-cv-112_ |
| | ) | TRO   TAV / SKL |
| **DAVID R. ESQUIVEL,** | ) | **TRO** |
| **HOWARD JEFFERSON ATKINS** | ) | **INJUCTIVE** |
| | ) | **CLASS ACTION** |
| **Defendants.** | ) | **JURY TRIAL DEMAND** |

## PRAYER OF COMPLAINT REQUESTING INJUNCTIVE, DECLARATORY AND COMPENSATORY RELEIF PURSUIANT TO 42 U.S.C. § 1983

### INTRODUCTION

1.　　　This is a pro se, 42 U.S.C. § 1983 civil rights action filed by Randy Jones, Don Carter, Robert Winters, John Boatfield, requesting injunctive, declaratory, compensatory, punitive, and nominal relief of violations of Plaintiffs constitutional rights secured under the Eighth Amendment prohibition of cruel and unusual punishment, Equal Protection of the Law, violation of Due Process Clause Fourteenth Amendment of the United States Constitution, and violation of the Ex Post Facto clause of the United States Constitution, against David R. Esquivell and Howard Jefferson Atkins.

2.　　　Specifically, Plaintiffs alleges that the reckless actions of the Defendants have caused continuing and on-going irreparable harm in violation of: Plaintiffs Eighth Amendment prohibition of cruel and unusual punishment; Plaintiffs Substantive Due Process Rights secured

1

under the Fourteenth Amendment and Plaintiffs Ex Post Facto clause of the United States Constitution.

3.    Defendants are being sued in their individual capacity.

4.    Specifically, Plaintiffs were all sentenced to a life sentence prior to the year 2020,

5.    Plaintiffs were not represented by Attorney David R. Esquivell;

6.    Plaintiffs were not represented on behalf of Howard Jefferson Atkins,

7.    Removed the original terms of confinement depriving Plaintiffs of their liberty.

## JURISDICITON AND VENUE

8.    This Court has jurisdiction over Plaintiffs' constitutional civil rights claims as invoked pursuant to 28 U.S.C. 1983 as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

9.    Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391, because Plaintiffs reside in Bledsoe County, within this judicial district, and is subject to personal jurisdiction within this judicial district.

## PARTIES

10.    Defendant David R. Esquivell is a licensed Attorney (21459) practices law at Bass, Berry & Sims PLC, 150 Third Avenue South Suite 2800, Nashville, TN 37201.

11.    Howard Jefferson Atkins in an adult resident of the State of Tennessee and is incarcerated at NECX 5249 Highway 67 W., Mountain City, TN 37683, (TDOC ID 00327480) serving a life sentence.

12.    Plaintiff Randy Jones is an adult resident of the State of Tennessee and is currently incarcerated at BCCX, 1045 Horsehead Rd., Pikeville, TN 37367, (TDOC ID 00120234), serving a life sentence.

2

13. Plaintiff Don Carter is an adult resident of the State of Tennessee and is currently incarcerated at BCCX, 1045 Horsehead Rd., Pikeville, TN 37367, (TDOC ID 00273092), serving a life sentence.

14. Plaintiff Robert Winters is an adult resident of the State of Tennessee and is currently incarcerated at BCCX, 1045 Horsehead Rd., Pikeville, TN 37367, (TDOC ID 00325157), serving a life sentence.

15. Plaintiff John Boatfield is an adult resident of the State of Tennessee and is currently incarcerated at BCCX, 1045 Horsehead Rd., Pikeville, TN 37367, (TDOC ID 00319189), serving a life sentence.

## LEGAL STANDARD

16. Pursuant to 42 U.S.C. § 1983, every person "who under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

17. The Eighth Amendment to the United States Constitution states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

18. The Due Process Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law."

3

19.     Plaintiff alleges the constitutional violations arises out of Defendants reckless and deliberate indifference actions.

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs seek relief from the wrongdoing of Defendants for themselves and for all members of the inmate class through Rule 23 of the Federal Rules of Civil Procedure.  The putative classes meet the statutory prerequisites of Fed. R. Civ. P. 23(a), as set forth herein.

21.     Plaintiff brings this action as a class action on behalf of all inmates in the custody of the Tennessee Department of Correction who are serving a life sentence under the Sentence Reform Act of 1989 until 2021

22.     The number and identity of putative Class members is easily ascertainable through discovery.

23.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff's believe there are hundreds of members in the proposed Class. Records identifying the members of the Class are in the possession of the Tennessee Department of Correction.

24.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are identically affected by Defendants wrongful conduct in violation of federal law and the United States Constitution that is complained of herein.

25.     Plaintiffs will fairly and adequately protect the interests of the members of the Class.

26.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. A class action

4

is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable in no small part due to his current incarceration. There will be no difficulty in the management of this action as a class action.

## STATEMENT OF FACTS

27.   Howard Jefferson Atkins filed in the Chancery Court of Davidson County, Nashville, Tennessee, requesting declaratory relief.

28.   Attorney David R. Esquivell assisted Howard Jefferson Atkins in obtaining an agreed order to have all post - 1995 life sentences calculated in accordance with a 2020 law[1].

29.   This is a clear violation of Ex Post Facto and Attorney David R. Esquivell should not only be disbarred for allowing his client to agree to an Ex Post Facto violation but for representing all other inmates without knowledge; removing the original terms of their confinement, inflicting them with an Ex Post Facto violation, violating their constitutionally protected Due Process Rights, and inflicting them with cruel and unusual punishment.

30.   All inmates in the Department of Corrections who were sentenced to a life sentence between 1995 and 2020 cannot have this 2020 law applied retroactively to them. This is in violation of Ex Post Facto clause. The recalculation of their sentence is illegal and voids the sentence entirely.

31.   In 1995 the General Assembly passed a bill that required certain crimes to serve 85% of the sentence imposed by the court.

(A)The 1995 Amendment[2] to T.C.A. § 40-35-501 stated:

"(i)(1) There shall be no release eligibility for a person committing an offense, on or after July 1, 1995 that is enumerated in subdivision (i)(2). The person shall serve one

---

[1] See Exhibit 1 (Court order agreement to have TDOC calculate a life sentence according to the **2020** law.)
[2] See Exhibit 2 (Bill passed by the General Assembly in 1995)

5

hundred percent (100%) of the **sentenced imposed** by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall operate to reduce the **sentence imposed by the court** by more than fifteen percent (15%)." (Emphasis added)

(B) The **2020** amendment[3] to T.C.A. § 40-35-501 states;

"(H)(2) There shall be no release eligibility for a person committing first degree murder, **on or after July 1, 1995**, receiving a sentence of imprisonment for life. The person shall serve one hundred percent (100%) of sixty years less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the **sentence imposed by the court** by more than fifteen percent (15%)."(Emphasis added)

32.     No person of common intelligence would believe that the 1995 and 2020 clarification amendment, as stated above, have the same meaning and penalties.

33.     This 1995 bill does not define a life sentence and it was never defined until the General Assembly passed what they called a clarification bill in 2020. Everyone sentenced to a life sentence between 1995 and 2020 cannot be calculated according to the 2020 law because it did not take effect until 2020.

34.     In 1993 the General Assembly passed a sentencing law that REQUIRED the jury in a First degree murder case be told that upon conviction a defendant must serve a minimum of 25 years before being eligible for parole[4].

35.     This law remained in effect and its application to Plaintiffs' were protected by the constitution under Substantive Due Process, Equal Protection of the Law, Ex Post Facto and prohibition against cruel and unusual punishment.

_____

[3] See Exhibit 3 (Clarification bill submitted by the General Assembly and eventually became 2020 Pub. Acts, ch. 756, § 1).
[4] See Exhibit 4 (T.C.A. 39-13-204)

6

36.     The General Assembly, in its wisdom, certainly has the right and power to direct the judicial process concerning the range of punishment resulting from a conviction of life or life without the possibility of parole not the Court, Attorneys, Sentence Management Services, or other inmates.

37.     A defendant charged with first degree murder has a claimable statutory and constitutional right to not only know the punishment but to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence. To have a defendant that is found guilty of a charge of murder in the first degree denied this right and then sentenced to a punishment greater than that mandated by statute is not only prejudice to the judicial process but violates the plaintiffs' substantial constitutional right of due process, violates the constitutional right to be free from cruel and unusual punishment, violates the constitutional right to equal protection of the law and violates the Plaintiffs constitutional rights secured under the United States Constitution.

38.     This law was never properly amended until 2021[5].

39.     The Attorney General's Office knew this 1995 law was in conflict[6].

40.     The Criminal Court of Appeals opined that the General Assembly did not properly amend the statutes in 1995[7].

41.     Judges, Attorney General's Office, and lawyers have known for almost 30 years that the 1995 law concerning first degree murder was vague, in conflict and not properly amended by the General Assembly. Ironically, everyone has continued business as usual and continued to illegally imprison defendants in violation of the constitution of the United States.

---

[5] See Exhibit 5 (General Assembly bill amending T.C.A. 39-13-204)
[6] See Exhibit 6 (Attorney General Memo form 1997 stating the conflict)
[7] See Exhibit 7 (State of Tennessee v. Charles Golden (**1998 WL 518071**)

42.     Judges, District Attorney General's Office and lawyers held a conference in 2020 and changed the jury pattern instructions in relation to a life sentence[8]. Within this conference, all those in attendance not only acknowledge that the 25 year minimum is required by law but those in attendance felt it was not a correct statement of the law. (**See Exhibit 8 footnote 2**)

43.     The jury pattern instruction required under § 39-13-204 was law and was not amended until 2021 Pub. Ch. 528[9]. The committee members were not legislatures and could not change the law, no matter how they felt. This was illegal and violated the Constitutional Rights of every defendant tried between 1995 and 2021.

44.     The term *Release Eligibility Date* concept actually originated in the Class X felony law of 1979 which had a similar provision called release classification status which occurred after serving the entire sentence of a Class X felony. Under this earlier law the RSC date or "RED" determined when a defendant would first become eligible for rehabilitative programs such as work release, parole, furlough, and other programs. Upon hitting the RED, the person would become eligible for release.

45.     Parole eligibility date and sentence expiration dates have very clear meanings under Tennessee law. See for example, T.C.A. § 41-21-236 discussing sentence expiration dates and parole dates.

46.     There is extreme ambiguity in the construction of the 1995 amendment to a life sentence. Notice that T.C.A. § 40-35-501(h)(1) specifies that an individual will be subject to release eligibility at 60% of 60 years, less credits earned. If the 1995 legislative enactments did away with release eligibility that in no way specifically amended the subsequent language in T.C.A. § 40-35-50l(h)(1) that a person sentenced to life would become eligible for parole when

_____

[8] See Exhibit 8 (Tenn. Prac. Pattern Jury instruction.)
[9] See Exhibit 5 (Tenn. Pub. Ch. 528)

8

the individual has served a minimum of 25 full calendar years of the sentence. In other words, the 25 year floor is still there and has not been repealed by the 1995 law. See *State of Tennessee v. Tyshon Booker, No. E2018-01439-SC-R11-CD, 2022 WL 17072990, \*5.*

47.     The same analysis does not apply to any of the other statutes enumerated in the 1995 amendments except for murder in the first degree. The term release eligibility date is very specific as to *all crimes* **except murder in the first degree** as it relates to the grading of the offenses, such as standard offender, mitigated offender, career offender and the like. There can be no doubt that the legislature intended to remove release eligibility for all of these enumerated offenses but it is still an open question as to murder in the first degree with respect to the eligibility for parole as opposed to the release eligibility date concept. See also the comments to T.C.A. § 39-ll-117, providing that first degree murder is not punished according to the sentencing structure contained in § T.C.A. § 40-35-105. See also T.C.A. § 40-35-501(a)(1) providing that an "inmate shall not be eligible for parole until reaching the inmate's release eligibility date..." T.C.A. 39-11-117 creates an a liberty interest to the terms of "parole" and RED because first degree murder has always fallen outside the sentencing structure of the 1989 law and **cannot now be applied cumulative**.

48.     In 1989 the General Assembly enacted T.C.A. § 39-13-204, First Degree Murder Sentencing Factors, which states in part:

> (a) Upon a trial for first degree murder, should the jury find the defendant guilty of first degree murder, it shall fix punishment in a separate sentencing hearing to determine whether the defendant shall be sentenced to death, to imprisonment for life without the possibility of parole, or to imprisonment for life.

> (e)(2) … The **jury shall be instructed** that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of the sentence. The jury shall also be instructed that a defendant who receives a sentence of

9

imprisonment for life without possibility of parole shall never be eligible for release on parole.

49.    Tennessee's criminal sentencing scheme concerning the 1995 life sentence statutes is so complicated that even the Tennessee courts, the Tennessee Attorney General, Legislature, Attorneys, and Defendant proceeding to trial did not fully understand the statues and sentence calculations. The statues have become so arbitrary that defendants have been denied the right to understand the charges against them, denied due process, denied the opportunity to plea due to inaccurate information in violation of the U.S. Constitution. See (ANALYSIS) *Maine v. State 2005 WL 1996631; and Penley v. State, 2004 WL2439287, at *3, No. E2004-00129-CCA-R3-PC (Tenn. Crim . App., November 1,2004).*

50.    The Tennessee Attorney General held that "pursuant to (h)(1), the determinate number is currently sixty years.  Since the 1995 amendment provides that there shall be no release eligibility for a person sentence to life imprisonment, the two provisions clearly conflict….", *Tenn. Op. Atty. Gen*. No. 97-098 1997 WL 449672 (Tenn. A.G., July 1, 1997). life without.)

51.    Some 24 years after the 1995 Amendment, due to the controversy and confusion between the Tennessee Courts and the Sixth Circuit concerning (h)(1) and (i)(2)(A) the Tennessee House and Senate **passed Public Chapter 765 House Bill No. 394** in an attempt to "**CLARIFY**" the murder statute.  This amendment violates the Ex Post Fact Clause by taking a twenty-five year old statute, changing the meaning and punishment for offenders that were sentenced between November 1, 1989 to 2020. Due to Defendants reckless actions this unconstitutional law is now being applied retroactively to Plaintiffs and those similarly situated.

52.    A bill presented by the General Assembly attempting to clarify the thirty (25) year old statute leaves no doubt that the statue is vague, debatable and in conflict with other

10

statutes. A version of that bill (HB 394/SB 453) was ultimately approved effective July 15, 2020 as Public Chapter 765.

53.     This *clarification* (bill) law, as applied to Plaintiffs is unconstitutional due to the Ex Post Facto clause and the Fourteenth Amendment of the United States Constitution and denies the Plaintiff his statutory and constitutional right to not only know the punishment but to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence.

**Cause of Action**

**Defendant David R. Esquivel and Howard Jefferson Atkins violated Plaintiffs Constitutional Rights secured under the Eight Amendment and Fourteenth Amendments and Ex Post Facto of the United States Constitution.**

54.     On September 30, 2022 the Chancery Court of Davidson County, Part IV issued a judgment and final Order based upon an agreed order by the Defendants.

55.     The ORDER was agreed upon by Petitioner *Howard Jefferson Atkins*, Attorney *David R. Esquivel,* Assistant Tennessee Attorney General *Andrew M. Mize.*

56.     Just within the past days Sentence Management services has applied this agreed order[10] using "(HB 394/SB 453) **effective July 15, 2020** as Public Chapter 765)" to re-calculate Plaintiffs sentence. However, Mr. Atkins sentence has been recalculated with a 25 minimum[11]. This is in violation of Plaintiffs U.S. Constitutional rights secured under Ex Post Facto, Substantive Due Process Clause and prohibition against cruel and unusual punishment.

57.     Mr. Atkins, Attorney *David R. Esquivel,* Assistant Tennessee Attorney General *Andrew M. Mize* and the Honorable *Russell T. Perkins* do not represent the Plaintiffs and cannot use a 2020 law to violate the Plaintiffs U.S. Constitutional rights.

---

[10] Exhibit 10 (Plaintiff Offender Summary Attributes)
[11] Exhibit 10 B (Atkins Offender Summary Attributes)

11

58.     The reckless actions of these Defendants have violated the Plaintiffs Due Process Constitutional Rights, inflicted Plaintiffs with cruel and unusual punishment, denied Plaintiffs Equal Protection of the law and violated Plaintiffs Ex Post Facto rights secured under the U.S. Constitution.

59.     Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order, and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

60.     Tennessee Code Annotated § 40-35-501(i)(l) is unclear as to whether it imposed a sentence greater than twenty-five (25) years imposed under § 39-13-204, nor was TCA § 39-13-204 amended to coincide with this new amendment.

61.     The Supreme Court has held:

> "When interpreting a criminal statute, **we do not play the part of a mind reader**. In our seminal rule-of-lenity decision, Chief Justice **Marshall rejected the impulse to speculate regarding a dubious congressional intent** '[p]robability is not a guide which a court, in construing a penal statute, can safely take.' *United States v. Wiltberger*, 5 Wheat. 76, 105 L.Ed. 37 (1820). And Justice Frankfurter, writing for the Court in another case, said the following: 'when Congress leaves to the Judicary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955). *United States v. Santos*, 553 U.S. 507, 515, 128 S.Ct. 2020, 1701 L.Ed.2d 912 (2008). (Emphasis added)

62.     **The rule of lenity**, (*U.S. v. Batchelder,* 99 S.Ct. 1298, 1979) demands that ambiguities in criminal statutes be resolved in favor of the Plaintiffs.

## Plaintiff Randy Jones' Sentence Details

1.      Plaintiff Randy Jones convicted offense date of first-degree is November 14, 1995 and the court imposed a life sentence under T.C.A. § 39-13-204. The trial court imposed the life sentence with a minimum of twenty-five (25) years[11] to serve under the 1989 statute[12].

2.      T.C.A. § 39-13-204 and § 40-35-501(i)(1)(2)(a) can be interpreted to read that the person shall serve 100% of the sentence imposed by the court of twenty-five years (25) with a maximum allowable reduction of 15% for sentencing credits earned.

3.      In the Plaintiff's case, who originally received the 25 year sentence, and now has a sentence of fifty-one (51) years is unconstitutional and imposes a sentence greater than that required by statute of murder in the first degree that Plaintiff was originally sentenced under. This is a clear violation of the Plaintiff s substantive due process rights.  This statute is unenforceable.

4.      Plaintiff Jones' sentence is imposed under T.C.A § 39-13-204. As early as 1998 the courts[13] were aware that T.C.A. § 39-13-204 and T.C.A. § 40-35-501(i)(1) were not amended to coincide with each other and T.C.A. § 40-35-501(i)(2)(a) was invalid.

The Court opined:

> "Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> It immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40- 35-501. The statutes presently are in conflict."

---

[11] Exhibit 11 (Trial transcripts sentencing)
[12] Exhibit 12 (Judgements reflecting 1989 sentencing law)
[13] See *State v. Golden*, No. 02C01-9709-CR-003621 998 WL 518071, at *7 -*8 (Tenn. Ct. Crim. App.1998)

5. In Plaintiff Jones' case the Court, The Attorney General, Counsel for the Defendant, and Jones all proceeded to trial with the fact of a life sentence being 25 years parole eligible.

6. The Plaintiff is now almost 2 years past his 25 year parole eligible and Sentence Management has now calculated the Plaintiff's sentence at 51 years to expire and **no parole**.

7. Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

### Plaintiff Don Carter's Sentence Details

1. Plaintiff Don Carter's convicted offense date of first-degree is February 12, 1997 and the court imposed a life sentence under T.C.A. § 39-13-204 with a minimum of twenty-five (25) years to serve.

2. T.C.A. § 39-13-204 and § 40-35-501(i)(1)(2)(a) can be interpreted to read that the person shall serve 100% of the sentence imposed by the court of twenty-five years (25) with a maximum allowable reduction of 15% for sentencing credits earned.

3. In the Plaintiff's case, who originally received the sentence under T.C.A. § 39-13-204 and now has a sentence of fifty-one (51) years is unconstitutional and imposes a sentence greater than that required by statute of murder in the first degree. This is a clear violation of the Plaintiff's substantive due process rights. This statute is unenforceable.

14

4.     Plaintiff Carters' sentence is imposed under T.C.A § 39-13-204. As early as 1998 the courts were aware that T.C.A. § 39-13-204 and T.C.A. § 40-35-501(i)(1) were not amended to coincide with each other and T.C.A. § 40-35-501(i)(2)(a) was invalid

The Court opined:

> "Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> It immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501. The statutes presently are in conflict."

5.     Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

### Plaintiff Robert Winter's Sentence Details

1.     Plaintiff Robert Winters' convicted offense date of first-degree is May 2, 1997 and the court imposed a life sentence under T.C.A. § 39-13-204.

2.     T.C.A. § 39-13-204 and § 40-35-501(i)(1)(2)(a) can be interpreted to read that the person shall serve 100% of the sentence imposed by the court of twenty-five years (25) with a maximum allowable reduction of 15% for sentencing credits earned.

3.     In the Plaintiff's case, who originally received the sentence under T.C.A. § 39-13-204 and now has a sentence of fifty-one (51) years is unconstitutional and imposes a sentence greater than that required by statute of murder in the first degree. This is a clear violation of the Plaintiff's substantive due process rights. This statute is unenforceable.

15

4.      Plaintiff Winters' sentence is imposed under T.C.A § 39-13-204. As early as 1998 the courts were aware that T.C.A. § 39-13-204 and T.C.A. § 40-35-501(i)(1) were not amended to coincide with each other and T.C.A. § 40-35-501(i)(2)(a) was invalid.

The Court opined:

> "Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> It immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40- 35-501. The statutes presently are in conflict."

5.      Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

**<u>Plaintiff John Boatfield's Sentence Details</u>**

1.      Plaintiff John Boatfield's convicted offense date of first-degree is May 3, 2000 and the court imposed a life sentence under T.C.A. § 39-13-204.

2.      T.C.A. § 39-13-204 and § 40-35-501(i)(1)(2)(a) can be interpreted to read that the person shall serve 100% of the sentence imposed by the court of twenty-five years (25) with a maximum allowable reduction of 15% for sentencing credits earned.

3.      In the Plaintiff's case, who originally received the sentence under T.C.A. § 39-13-204 and now has a sentence of fifty-one (51) years is unconstitutional and imposes a sentence greater than that required by statute of murder in the first degree. This is a clear violation of the Plaintiff s substantive due process rights.  This statute is unenforceable.

16

4.     Plaintiff Boatfield's sentence is imposed under T.C.A § 39-13-204. As early as 1998 the courts were aware that T.C.A. § 39-13-204 and T.C.A. § 40-35-501(i)(1) were not amended to coincide with each other and T.C.A. § 40-35-501(i)(2)(a) was invalid.

The Court opined:

> "Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> It immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40- 35-501. The statutes presently are in conflict."

5.     Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief:

A.     Plaintiffs pray this Court to issue a temporary injunction directing TDOC Sentence Management services to cease and desist the re-calculation of Plaintiffs and all those similarly situated under the unconstitutional 1995 Amendment. The re-calculation is in violation of Plaintiffs' U.S. constitutional rights, as stated above

B.     A finding that Plaintiffs' rights pursuant to the Eighth Amendment of the United States Constitution have been violated via the infliction of cruel and unusual punishment;

17

C.   A finding that Plaintiffs' rights pursuant to the Fourteenth Amendments of the United States Constitution have been violated via the violation of Plaintiffs' substantive due process Rights;

D.   A finding that Plaintiffs' rights pursuant to the Ex Post Facto of the United States Constitution have been violated.

E.   A finding that Defendants award the Plaintiffs $ 1,000,000.00 in compensatory damages due to the mental anguish, sleep deprivation, etc. etc. the Plaintiffs have suffered from the reckless actions of Defendants;

F.   A finding that Defendants award the Plaintiffs $ 4,000,000.00 in punitive damages from the reckless actions of Defendants;

G.   A finding that Defendants award the Plaintiffs $ 1,000,000.00 in nominal damages to cover all legal fees, filing fees, and any other coast associated with the process of this complaint due to the reckless actions of Defendants.

H.   All other relief, legal or equitable, this the Court deems just and proper.

Date: May 9 , 2023


Respectfully submitted,

Randy Jones #120234 pro se
B.C.C.X. Mens Complex
1045 Horsehead Rd.
Pikeville, TN 37367

Don Carter #273092
B.C.C.X. Mens Complex
1045 Horsehead Rd.
Pikeville, TN 37367

Robert Winters #325157
B.C.C.X. Mens Complex
1045 Horsehead Rd.
Pikeville, TN 37367

John Boatfield #319189
B.C.C.X. Mens Complex
1045 Horsehead Rd.
Pikeville, TN 37367

18

E-FILED
9/29/2022 2:11 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART IV

HOWARD JEFFERSON ATKINS, )
)
Petitioner, )
)
v. )  Case No. 22-0574-IV
)
TENNESSEE DEPARTMENT OF )
CORRECTION, et al. )
)
Respondents. )

NF

---

## AGREED DECLARATORY JUDGMENT AND FINAL ORDER

On the agreement of the parties, the Court hereby enters this declaratory judgment for

Petitioner and finds that the date currently reflected in TOMIS as Petitioner's Release Eligibility

Date (i.e. parole eligibility date), December 7, 2051, should instead reflect Petitioner's Expiration

Date. Further, TOMIS should reflect Petitioner's Full Expiration Date as December 7, 2060. The

current label of "Release Eligibility Date" identified in TOMIS is inaccurate and inconsistent with

Tenn. Code Ann. § 40-35-501(h)(2), as amended.   2020 Tenn. Pub. Acts, ch. 765, § 1.

Respondents agree that Petitioner's TOMIS information should reflect an expiration date rather

than a parole eligibility date.

Respondents have initiated the process of making the aforementioned corrections to the

TOMIS database to comply with Tenn. Code Ann. § 40-35-501(h)(2). The Court orders

Respondent Tennessee Department of Correction to correct Petitioner's information currently

reflected in TOMIS consistent with this Declaratory Judgment and Final Order as soon as

practicable. If within nine (9) months Respondents are unable to correct Petitioner's TOMIS

information to reflect an expiration date consistent with this Declaratory Judgment and Final

Order, the Parties agree to confer and appear for a status conference on the issue. The Court shall maintain jurisdiction over this action until Petitioner's TOMIS information has been corrected.

IT IS SO ORDERED.

RUSSELL T. PERKINS, CHANCELLOR

Respectfully submitted for entry,

*s/ David R. Esquivel*
David R. Esquivel (#21459)
BASS, BERRY & SIMS PLC
150 Third Avenue South
Suite 2800
Nashville, Tennessee 37201
(615) 742-6200
desquivel@bassberry.com
*Counsel for Petitioner*

*s/ Andrew M. Mize*
ANDREW M. MIZE B.P.R. No. 037034
Assistant Attorney General
Law Enforcement &
Special Prosecutions Division
Office of the Tennessee
Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 532-2552
andrew.mize@ag.tn.gov
*Counsel for Respondents*

2

WESTLAW

Ex. 2

**CRIMINAL PROCEDURE—SENTENCING—RELEASE ELIGIBILITY, APPLICABILITY TO CERTAIN OFFENSES**
1995 Tennessee Laws Pub. Ch. 492 (H.B. 1762)   *(Approx. 2 pages)*

1995 Tennessee Laws Pub. Ch. 492 (H.B. 1762)

TENNESSEE 1995 SESSION LAWS
1995 SESSION OF THE 99TH GENERAL ASSEMBLY

Additions and deletions are not identified in this document.

Pub. Ch. 492
H.B. No. 1762
CRIMINAL PROCEDURE—SENTENCING—RELEASE ELIGIBILITY,
APPLICABILITY TO CERTAIN OFFENSES

AN ACT to amend Tennessee Code Annotated, Title 40, Chapter 35,
relative to the percentage of sentence that persons convicted of certain
offenses must serve.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF
TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 40–35–501, is
amended by adding the following new subsection (i) and by relettering
present subsections accordingly:

<< TN ST § 40–35–501 >>

(i)(1) There shall be no release eligibility for a person committing an
offense on or after July 1, 1995 that is enumerated in subpart (2) of this
subsection. Such person shall serve one hundred percent (100%) of the
sentence imposed by the court less sentence credits earned and retained.
Provided, however, no sentence reduction credits authorized by Tennessee
Code Annotated, Section 41–21–236, or any other provision of law shall
operate to reduce the sentence imposed by the court by more than fifteen
percent (15%).

(2) The offenses to which the provisions of subpart (1) of this subsection
apply are:
(A) Murder in the first degree;
(B) Murder in the second degree;
(C) Especially aggravated kidnapping;
(D) Aggravated kidnapping;
(E) Especially aggravated robbery;
(F) Aggravated rape;
(G) Rape;
(H) Aggravated sexual battery;
(I) Rape of a child;
(J) Aggravated arson; or
(K) Aggravated child abuse.

(3) Nothing in this subsection shall be construed as affecting, amending or
altering the provisions of Tennessee Code Annotated, Section 39–13–523,
which requires child rapists and multiple rapists to serve the entire sentence
imposed by the court undiminished by any sentence reduction credits.

# HB 0394 by *Garrett

# (SB 0453) by *Bell

Sentencing - As enacted, revises and clarifies release eligibility for certain persons sentenced to life imprisonment for first degree murder. - Amends TCA Title 4; Title 37; Title 38; Title 39; Title 40 and Title 41.

HB0394 has been assigned Public Chapter Number 765 by the Secretary of State.

**CONFERENCE COMMITTEE REPORTS**

Majority Report # 1 for HB0394 / SB0453

 Summary

## FISCAL SUMMARY

NOT SIGNIFICANT

## BILL SUMMARY

Under present law:

(1) Release eligibility for a defendant receiving a sentence of imprisonment for life for first degree murder occurs after service of 60 percent of 60 years, less sentence credits earned and retained by the defendant, but in no event is a defendant sentenced to imprisonment for life eligible for parole until the defendant has served a minimum of 25 full calendar years of the sentence. A defendant receiving a sentence of imprisonment for life for first degree murder is entitled to earn and retain sentence credits, but the credits do not operate to make the defendant eligible for release prior to the service of 25 full calendar years; and
(2) There is no release eligibility for a person committing first degree murder, on or after July 1, 1995. The person must serve 100 percent of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits operate to reduce the sentence imposed by the court by more than 15 percent (meaning the person has to serve 85 percent of 60 years, which is 51 years).

This bill clarifies that the provisions described above in (1) apply when the offense was committed prior to July 1, 1995, and clarifies in regard to the provisions in (1) that the offender is eligible for parole after service of a minimum of 25 calendar years.

ON APRIL 30, 2019, THE HOUSE ADOPTED AMENDMENTS #2 AND #1 AND PASSED HOUSE BILL 394, AS

AMENDED.

AMENDMENT #2 reorganizes the language of this bill and present law regarding release eligibility, but does not make a substantive change.

AMENDMENT #1 revises present law regarding admission to bail. Under present law:

(1) A person who violates a condition of release is subject to immediate arrest; and
(2) If the violation of the condition or release does not also constitute a violation of an order of protection or restraining order, then release condition violation is punished as contempt of the court imposing the conditions, and the bail of the person violating the condition of release may be revoked.

This amendment revises (2) above to instead provide that violation of a condition of release is a Class A misdemeanor. Under this amendment, the person violating the condition of release will be charged with the offense, and the bail of the person may be revoked by the court having jurisdiction over the condition of release. The venue for the new offense will be in the county where the violation of a condition of release occurred.

ON FEBRUARY 6, 2020, THE SENATE SUBSTITUTED HOUSE BILL 394 FOR SENATE BILL 453, ADOPTED AMENDMENT #3, AND PASSED HOUSE BILL 394, AS AMENDED.

AMENDMENT #3 removes the changes described in the summary for House Amendment #1.

ON FEBRUARY 24, 2020, THE HOUSE NONCONCURRED IN SENATE AMENDMENT #3.

ON MARCH 2, 2020, THE SENATE REFUSED TO RECEDE IN ITS ACTIONS IN ADOPTING SENATE AMENDMENT #3.

ON MARCH 9, 2020, THE HOUSE REFUSED TO RECEDE FROM ITS NONCONCURRENCE IN SENATE AMENDMENT #3 AND APPOINTED A CONFERENCE COMMITTEE.

ON JUNE 4, 2020, THE SENATE APPOINTED A CONFERENCE COMMITTEE.

ON JUNE 11, 2020, THE HOUSE ADOPTED THE CONFERENCE COMMITTEE REPORT AND MADE IT THE ACTION OF THE HOUSE.

ON JUNE 17, 2020, THE SENATE ADOPTED THE CONFERENCE COMMITTEE REPORT AND MADE IT THE ACTION OF THE SENATE.



## State of Tennessee

## PUBLIC CHAPTER NO. 765

### HOUSE BILL NO. 394

**By Representative Garrett**

**Substituted for: Senate Bill No. 453**

**By Senators Bell, Stevens**

AN ACT to amend Tennessee Code Annotated, Title 4; Title 37; Title 38; Title 39; Title 40 and Title 41, relative to the criminal justice system.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 40-35-501(h), is amended by deleting the subsection and substituting instead the following:

(h)

(1) Release eligibility for a defendant committing the offense of first degree murder on or after November 1, 1989, but prior to July 1, 1995, who receives a sentence of imprisonment for life occurs after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236, or any other provision of law relating to sentence credits.

(2) There shall be no release eligibility for a person committing first degree murder, on or after July 1, 1995, and receiving a sentence of imprisonment for life. The person shall serve one hundred percent (100%) of sixty (60) years less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

(3) There shall be no release eligibility for a defendant receiving a sentence of imprisonment for life without possibility of parole for first degree murder or aggravated rape of a child.

SECTION 2. Tennessee Code Annotated, Section 40-35-501(i), is amended by deleting subdivision (i)(2)(A).

SECTION 3. This act shall take effect upon becoming a law, the public welfare requiring it.

Ex. 3

HOUSE BILL NO. ___394___

PASSED: _____June 17, 2020_____

_____
CAMERON SEXTON, SPEAKER
HOUSE OF REPRESENTATIVES

_____
RANDY MCNALLY
SPEAKER OF THE SENATE

APPROVED this __15th__ day of ____JULY_____ 2020

_____

## § 39-13-204. First degree murder; sentencing; factors

Currentness

(a) Upon a trial for first degree murder, should the jury find the defendant guilty of first degree murder, it shall not fix punishment as part of the verdict, but the jury shall fix the punishment in a separate sentencing hearing to determine whether the defendant shall be sentenced to death, to imprisonment for life without possibility of parole, or to imprisonment for life. The separate sentencing hearing shall be conducted as soon as practicable before the same jury that determined guilt, subject to the provisions of subsection (k) relating to certain retrials on punishment.

(2) The trial judge shall provide the jury three (3) separate verdict forms, as specified by subdivisions (f)(1), (f)(2), and (g)(2)(B). The jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of the sentence. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be eligible for release on parole.

(f)(1) If the jury unanimously determines that no statutory aggravating circumstance has been proven by the state beyond a reasonable doubt, the sentence shall be imprisonment for life. The jury shall then return its verdict to the judge upon a form provided by the court, which may appear substantially as follows:
PUNISHMENT OF IMPRISONMENT FOR LIFE
We, the jury, unanimously determine that no statutory aggravating circumstance has been proven by the state beyond a reasonable doubt. We, the jury, therefore find that the sentence shall be imprisonment for life.

Indeterminate **sentence** law applies only where there is maximum and minimum term of imprisonment. T.C.A. § 40-2707. State ex rel. Crumpler v. Henderson, 1968, 428 S.W.2d 800. **Sentencing** And **Punishment** ⟿ 34

When a jury verdict provides for minimum and maximum sentences, it is not proper under the **determinate sentence** law. T.C.A. § 40-2707. State v. Williams, 1978, 575 S.W.2d 948, certiorari denied 99 S.Ct. 2866, 442 U.S. 932, 61 L.Ed.2d 302. Criminal Law ⟿ 884

Jury verdict which, after finding defendant guilty of second-degree murder, fixed punishment at not less than ten years in the state penitentiary was not a proper **sentence** under the **determinate sentence** law as it was facially vague and ambiguous and did not reflect a definite or certain period of confinement; **sentence** could not be treated as a **determinant** ten-year **sentence**. T.C.A. §§ 39-2408, 40-2707. State v. Williams, 1978, 575 S.W.2d 948, certiorari denied 99 S.Ct. 2866, 442 U.S. 932, 61 L.Ed.2d 302. Homicide ⟿ 1557

### § 40-20-107. Felony convictions; sentence | WestlawNext

**Sentence** for first degree murder properly provided for imprisonment for definite term of years in accordance with jury's verdict instead of providing for imprisonment for period not in excess of term fixed by jury, since Indeterminate **Sentence** Law does not apply to capital offenses of murder and rape. Williams' Code, §§ 10772, 11766. Franks v. State, 1948, 213 S.W.2d 105, 187 Tenn. 174. **Sentencing** And **Punishment** ⟿ 1057

Ex . 5

**2021 Tennessee Laws Pub. Ch. 528 (H.B. 511)**

TENNESSEE 2021 SESSION LAWS 2021 SESSION OF THE 112th GENERAL ASSEMBLY   *(Approx. 4 pages)*

2021 Tennessee Laws Pub. Ch. 528 (H.B. 511)

TENNESSEE 2021 SESSION LAWS

2021 SESSION OF THE 112th GENERAL ASSEMBLY

Additions and deletions are not identified in this document.

Vetoes are indicated by ~~Text~~ ;

stricken material by ~~Text~~ .

Pub. Ch. 528

H.B. No. 511

By Representatives Gant, Lamberth, Faison, Terry, Grills, Todd, Moody, Curcio, Hazlewood, Halford, Tim Hicks, Crawford, Eldridge, Weaver, Howell, Zachary, Littleton, Cepicky, Reedy, Holsclaw, Doggett, Curtis Johnson, Hawk, Haston, Farmer, Griffey, Carringer, Gillespie, Rudd, Russell, Moon, Alexander, Wright, Windle, White, Gary Hicks, Bricken, Sherrell, Smith, Hurt, Whitson, Mannis, Ragan

Substituted for: Senate Bill No. 841

By Senators Johnson, Bowling, Crowe, Jackson, Rose, Stevens, Pody, White

AN ACT to amend Tennessee Code Annotated, Title 39, Chapter 13 and Title 40, relative to first degree murder.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

<< TN ST § 39–13–202 >>

SECTION 1. Tennessee Code Annotated, Section 39–13–202(a)(2), is amended by deleting the language "act of terrorism.".

SECTION 2. Tennessee Code Annotated, Section 39–13–202(a), is amended by adding the following as a new subdivision:

<< TN ST § 39–13–202 >>

(4) A killing of another in the perpetration or attempted perpetration of an act of terrorism in violation of § 39–13–805.

SECTION 3. Tennessee Code Annotated, Section 39–13–202, is amended by deleting subsection (b) and substituting:

<< TN ST § 39–13–202 >>

(b) No culpable mental state is required for conviction under subdivisions (a)(2)—(4), except the intent to commit the enumerated offenses or acts in those subdivisions.

SECTION 4. Tennessee Code Annotated, Section 39–13–202, is amended by deleting subsection (c) and substituting:

<< TN ST § 39–13–202 >>

(c)

(1) Except as provided in subdivision (c)(2), a person convicted of first degree murder under subdivisions (a)(1)—(4) shall be punished by:

(A) Death;

(B) Imprisonment for life without possibility of parole; or

(C) Imprisonment for life.

(2) If a person convicted of first degree murder under subdivision (a)(4) was an adult at the time of commission of the offense, then the person shall be punished by:

(A) Death; or

(B) Imprisonment for life without possibility of parole.

SECTION 5. Tennessee Code Annotated, Section 39–13–204(e)(2), is amended by deleting the language "three (3)" and by deleting the second sentence of the subdivision and substituting:

<< TN ST § 39–13–204 >>

If the defendant has been found guilty of first degree murder as described in § 39–13–202(c)(1), then the jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least fifty-one (51) full calendar years of the sentence.

<< TN ST § 39–13–204 >>

SECTION 6. Tennessee Code Annotated, Section 39–13–204(f)(1), is amended by deleting the language "If the jury unanimously determines" and substituting instead "If the defendant has been found guilty of first degree murder as described in § 39–13–202(c)(1) and the jury unanimously determines".

<< TN ST § 39–13–204 >>

SECTION 7. Tennessee Code Annotated, Section 39–13–204(f)(2), is amended by deleting the language "If the jury unanimously determines" and substituting instead "Except as provided in subdivision (f)(2)(B), if the jury unanimously determines".

SECTION 8. Tennessee Code Annotated, Section 39–13–204(f), is amended by designating the current subdivision (f)(2) as subdivision (f)(2)(A) and inserting the following new subdivision (f)(2)(B):

<< TN ST § 39–13–204 >>

(B)

(i) If the defendant has been found guilty of first degree murder as described in § 39–13–202(c)(2) and the jury unanimously determines that no statutory aggravating circumstance has been proven by the state beyond a reasonable doubt, or that a statutory aggravating circumstance or circumstances have been proven by the state beyond a reasonable doubt, but that such circumstance or circumstances have not been proven by the state to outweigh any mitigating circumstance or circumstances beyond a reasonable doubt, then the sentence shall be imprisonment for life without possibility of parole.

(ii) If imprisonment for life without possibility of parole is the sentence of the jury, then the jury shall reduce to writing the finding that no statutory aggravating circumstance or circumstances have been proven by the state beyond a reasonable doubt, or that a statutory aggravating circumstance or circumstances have been proven by the state beyond a reasonable doubt, but that such circumstance or circumstances have not been proven by the state to outweigh any mitigating circumstance or circumstances beyond a reasonable doubt.

(iii) These findings and verdict must be returned to the judge upon a form provided by the court, which may appear substantially as follows:

PUNISHMENT OF IMPRISONMENT FOR LIFE WITHOUT POSSIBILITY OF PAROLE

[ ] We, the jury, unanimously agree that no statutory aggravating circumstance or circumstances have been proven by the state beyond a reasonable doubt and that the defendant shall be sentenced to imprisonment for life without possibility of parole.

[ ] We, the jury, unanimously agree that a statutory aggravating circumstance or circumstances have been proven by the state beyond a reasonable doubt, but that such circumstance or circumstances have not been proven by the state to outweigh any mitigating circumstance or circumstances beyond a reasonable doubt and that the defendant shall be sentenced to imprisonment for life without possibility of parole.

_____ /s/ _____          _____ /s/ _____
Jury Foreperson                                              Juror

548

court for a determination of whether the defendant is intellectually disabled. The motion must set forth a colorable claim that the defendant is ineligible for the death penalty due to intellectual disability. Either party may appeal the trial court's decision in accordance with Rule 3 of the Tennessee Rules of Appellate Procedure.

(2) A defendant shall not file a motion under subdivision (g)(1) if the issue of whether the defendant has an intellectual disability has been previously adjudicated on the merits.

### 39-13-204. Sentencing for first degree murder.

(a) Upon a trial for first degree murder, should the jury find the defendant guilty of first degree murder, it shall not fix punishment as part of the verdict, but the jury shall fix the punishment in a separate sentencing hearing to determine whether the defendant shall be sentenced to death, to imprisonment for life without possibility of parole, or to imprisonment for life. The separate sentencing hearing shall be conducted as soon as practicable before the same jury that determined guilt, subject to the provisions of subsection (k) relating to certain retrials on punishment.

(b) In the sentencing proceeding, the attorney for the state shall be allowed to make an opening statement to the jury and then the attorney for the defendant shall also be allowed such statement; provided, that the waiver of opening statement by one party shall not preclude the opening statement by the other party.

(c) In the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment, and may include, but not be limited to, the nature and circumstances of the crime; the defendant's character, background history, and physical condition; any evidence tending to establish or rebut the aggravating circumstances enumerated in subsection (i); and any evidence tending to establish or rebut any mitigating factors. Any such evidence that the court deems to have probative value on the issue of punishment may be received, regardless of its admissibility under the rules of evidence; provided, that the defendant is accorded a fair opportunity to rebut any hearsay statements so admitted. However, this subsection (c) shall not be construed to authorize the introduction of any evidence secured in violation of the constitution of the United States or the constitution of Tennessee. In all cases where the state relies upon the aggravating factor that the defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person, either party shall be permitted to introduce evidence concerning the facts and circumstances of the prior conviction. Such evidence shall not be construed to pose a danger of creating unfair prejudice, confusing the issues, or misleading the jury and shall not be subject to exclusion on the ground that the probative value of the evidence is outweighed by prejudice to either party. Such evidence shall be used by the jury in determining the weight to be accorded the aggravating factor. The court shall permit a member or members, or a representative or representatives of the victim's family to testify at the sentencing hearing about the victim and about the impact of the murder on the family of the victim and other relevant persons. The evidence may be considered by the jury in determining which sentence to impose. The court shall permit members or representatives of the victim's family to attend the trial, and those persons shall not be excluded because the person or persons

Page: 549    Date: 12/09/21    Time: 18:27:15
Path: @psc3913/nep_usa_pri/XPRIMARY/STATUTES/TN_IS/PRIMARYtn_statutes_ccdebillv1_120921175600049

shall testify during the sentencing proceeding as to the impact of the offense.

(d) In the sentencing proceeding, the state shall be allowed to make a closing argument to the jury; and then the attorney for the defendant shall also be allowed such argument, with the state having the right of closing.

(e)(1) After closing arguments in the sentencing hearing, the trial judge shall include instructions for the jury to weigh and consider any of the statutory aggravating circumstances set forth in subsection (i), which may be raised by the evidence at either the guilt or sentencing hearing, or both. The trial judge shall also include instructions for the jury to weigh and consider any mitigating circumstances raised by the evidence at either the guilt or sentencing hearing, or both, which shall include, but not be limited to, those circumstances set forth in subsection (j). These instructions and the manner of arriving at a sentence shall be given in the oral charge and in writing to the jury for its deliberations. However, a reviewing court shall not set aside a sentence of death or of imprisonment for life without the possibility of parole on the ground that the trial court did not specifically instruct the jury as to a requested mitigating factor that is not enumerated in subsection (j).

(2) The trial judge shall provide the jury separate verdict forms, as specified by subdivisions (f)(1), (f)(2), and (g)(2)(B). If the defendant has been found guilty of first degree murder as described in § 39-13-202(c)(1), then the jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least fifty-one (51) full calendar years of the sentence. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be eligible for release on parole.

(f)(1) If the defendant has been found guilty of first degree murder as described in § 39-13-202(c)(1) and the jury unanimously determines that no statutory aggravating circumstance has been proven by the state beyond a reasonable doubt, the sentence shall be imprisonment for life. The jury shall then return its verdict to the judge upon a form provided by the court, which may appear substantially as follows:

PUNISHMENT OF IMPRISONMENT FOR LIFE

We, the jury, unanimously determine that no statutory aggravating circumstance has been proven by the state beyond a reasonable doubt. We, the jury, therefore find that the sentence shall be imprisonment for life.

/s/ _____          /s/ _____
        Jury Foreperson                              Juror

/s/ _____          /s/ _____
            Juror                                    Juror

/s/ _____          /s/ _____
            Juror                                    Juror

/s/ _____          /s/ _____
            Juror                                    Juror

/s/ _____          /s/ _____
            Juror                                    Juror

/s/ _____          /s/ _____
            Juror                                    Juror

**WESTLAW**

J. Randall Wyatt
Office of the Attorney General    July 1, 1997   *(Approx. 4 pages)*

$Ex. 6$

Tenn. Op. Atty. Gen. No. 97-098 (Tenn.A.G.), 1997 WL 449672

Office of the Attorney General

State of Tennessee
Opinion No. 97-098
July 1, 1997

**Minimum length of sevice for life sentences imposed after July 1, 1995.**

*1 The Honorable J. Randall Wyatt, Jr.
Criminal Court
Division II
20th Judicial District
602 Metro Courthouse
Nashville, Tennessee 37201

### QUESTION

What effect does Tenn. Code Ann. §40-35-501, as amended by 1995 Tenn. Pub. Acts, Ch. 492, have on the minimum length of time that a person must serve before becoming eligible for release upon receiving a life sentence?

### OPINION

It is the opinion of this Office that, under the amended Tenn. Code Ann. § 40-35-501, the mandatory minimum period of confinement that must be served by those sentenced to life imprisonment is fifty-one years.

### ANALYSIS

1995 Tenn. Pub. Acts, Ch. 492, amended Tenn. Code Ann. §40-35-501 by adding subsection (i), which states, in pertinent part, that:

There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (2). Such person shall serve one-hundred percent (100%) of the sentence imposed by the court, less sentence credits earned and retained. However, no sentence reduction credits...shall operate to reduce the sentence imposed by the court by more than 15%.

1995 Tenn. Pub. Acts, Ch. 492. The first offense enumerated in subdivision (2) is murder in the first degree. Tenn. Code Ann. §39-13-202(i)(2)(A)(1995 Supp.). (Emphasis added)

Three distinct penalties for first degree murder are set out by statute: death, life without the possibility of parole or life. Tenn. Code Ann. §39-13-202(c)(1)(2)(3)(1995 Supp.). Before the passage of Pub. Ch. 492, any possible release eligibility of a defendant sentenced to life was governed exclusively by the provisions of Tenn. Code Ann. §40-35-501(h)(1)(1995 Supp.). This section requires that:

Ex. 6

<u>Release eligibility</u> for each defendant receiving a sentence of imprisonment for life for first degree murder <u>shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned</u> and retained by the defendant, <u>but in no event</u> shall a defendant sentenced to imprisonment for life be eligible for parole <u>until the defendant has served a minimum of twenty-five (25) full calendar years of such sentence</u>, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, or any sentence reduction credits authorized by § 41-21-236, or any other provision of law relating to sentence credits. A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain such sentence credits, but such credits shall not operate to make such defendant eligible for release prior to the service of twenty-five (25) full calendar years.

Tenn. Code Ann. §40-35-501(h)(1)(emphasis added).

For the sole purposes of determining the release eligibility of a life sentence, a determinate number of years is treated as a full life sentence. Pursuant to (h)(1), the determinate number is currently sixty years. Since the 1995 amendment provides that there shall be *no release eligibility* for a person sentenced to life imprisonment, the two provisions clearly conflict with regard to whether a person sentenced to life ever becomes eligible for release. For this reason, the amendment providing that the accused serve 100% of a sentence for the enumerated crimes in the amendment cannot be applied strictly to the punishment of life for first degree murder. Since the amendment's application is unclear in this regard, the legislative intent is helpful in giving the intended effect to the law. *Woodruff v. City of Nashville*, 183 Tenn. 483, 192 S.W.2d 1013, 1015 (Tenn. 1946).

*2 The House Judiciary Committee specifically stated that the intent of the act, in so far as a life sentence for first degree murder is concerned, was to raise the already-existing floor of time to be served as provided in §40-35-501(h)(1), from 60% to 100% of the sixty years. Special Report to the House Judiciary Committee, Tape # 1, May 3, 1995 at 672. Moreover, for purposes of providing adequate funding, the amendment's fiscal impact was calculated by raising the minimum number of years a life sentence absolutely required from 60% to 100% of sixty years. *Id.* at 723.

In addition, §40-35-501(h)(1), requires that a twenty-five year minimum "floor" must be served before a defendant sentenced to life for first degree murder becomes eligible for any consideration of release eligibility. As the foregoing discussion points out, this conflicts with both the language and intent of sub-section(i), which was intended to raise the floor for release eligibility. When there is a conflict which cannot be resolved, long established rules of statutory construction provide that the most recently enacted statute repeals by implication any irreconcilable provisions of the former act. *Tennessee-Carolina Transportation. Inc. v. Pentecost*, 362 S.W.2d 461, 211 Tenn. 72 (1962). Since there is no way to reconcile the conflict, it is the opinion of this Office that Tenn. Code Ann. § 40-35-501(h)(1) has been repealed by implication by the enactment of Public Chapter 492, only to the extent that they conflict. *American City Bank v. Western Auto Supply*, 631 S.W.2d 410. 428 (Tenn. App. 1981). The only reasonable resulting interpretation would be that subsection (i) operates, in so far as it conflicts with the provisions of the existing statute governing release eligibility, to raise

Ex. 6

the floor from 60% of sixty years (the arbitrary number of years for the purpose of calculating release eligibility), to 100% of sixty years, reduced by not more than 15% of eligible credits.

Under this analysis, the term of imprisonment for first degree murder is one hundred (100%) percent of the life sentence pursuant to subsection (i) of Tenn. Code Ann. §40-35-405 for crimes committed on or after July 1, 1995. The possible punishments for first degree murder remain either death, life without the possibility of parole or life imprisonment. The current amendment's effect on the latter possibility would entitle the defendant to release eligibility only after serving sixty years, the equivalent to a life sentence for the purpose of calculating release eligibility, less any eligible credits so long as they do not operate to reduce the sentence more than 15%. Therefore, the mandatory minimum percentage of a life term that must be served prior to becoming release eligible is 85% of sixty years, or fifty-one years.

John Knox Walkup
Attorney General and Reporter
Michael E. Moore
Solicitor General
Kathy Morante
Deputy Attorney General

Tenn. Op. Atty. Gen. No. 97-098 (Tenn.A.G.), 1997 WL 449672

End of Document                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2016 Thomson Reuters                                        THOMSON REUTERS

**State v. Golden**

Court of Criminal Appeals of Tennessee, at Jackson.    August 21, 1998    Not Reported in S.W.2d    1998 WL 518071    *(Approx. 8 pages)*

1998 WL 518071
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR
WITHDRAWAL.

Court of Criminal Appeals of Tennessee, at Jackson.

**State** of TENNESSEE, Appellee,

v.

Charles **GOLDEN**, Appellant.

No. 02C01-9709-CR-00362.

Aug. 21, 1998.

ON APPEAL FROM THE JUDGMENT OF THE CRIMINAL COURT OF SHELBY COUNTY.

**Attorneys and Law Firms**

*FOR THE APPELLANT:* STEFFEN G. SCHREINER, 369 N. Main, Memphis, TN.

*FOR THE APPELLEE:* JOHN KNOX WALKUP, Attorney General and Reporter, PETER M.
COUGHLAN, Assistant Attorney General, 425 5th Avenue North, Nashville, TN 37243.
WILLIAM L. GIBBONS, District Attorney General, PHILLIP GERALD HARRIS, JERRY
KITCHEN, Assistants District Attorneys General, Criminal Justice Complex, Suite 301, 201
Poplar Street, Memphis, TN 38103.

Hon. CHRIS CRAFT, J.

*OPINION*

DAVID H. WELLES, JUDGE

**\*1** The Defendant, Charles **Golden**, pursuant to Tennessee Rule of Appellate Procedure
3(b), appeals as of right his conviction of first-degree murder and sentence of life
imprisonment without the possibility of parole. Defendant asserts five claims of error: (1)
that Defendant could have been guilty of only second-degree murder because he lacked
the specific intent for first-degree murder; (2) that the court should have granted
Defendant's requested jury instruction concerning his mental condition; (3) that the court
improperly instructed the jury concerning reasonable doubt; (4) that the court improperly
instructed the jury concerning the unavailability of a defense of duress; and (5) that the
court improperly instructed the jury concerning when Defendant would be eligible for
release on parole if sentenced to life imprisonment. Although we affirm the conviction, we
remand for resentencing due to the inaccuracy of the parole eligibility jury instruction.

Defendant was indicted by the Shelby County Grand Jury on October 31, 1996, on a
charge of first-degree murder in violation of Tennessee Code Annotated § 39-13-202.
Judge Chris Craft of the Criminal Court for Shelby County appointed counsel for Defendant
and presided over his trial on March 17-19, 1997. Following jury verdicts on guilt and
sentencing, the court entered a judgment of conviction and sentence of life imprisonment
without the possibility of parole. Defendant's Motion for New Trial was overruled on April
18, 1997, and he timely appeals.

At trial the **State** presented proof that Defendant shot and killed Sergeant Deadrick Taylor,
a deputy jailer for the Shelby County Sheriff's Department, when Taylor returned to his
home after work. Sergeant Taylor arrived home at his usual time; but before he was able to
enter his house, Defendant shot Taylor beside his car. The victim's wife heard her husband
drive into the carport area and then heard "nothing but gunfire." As the gunfire continued,
she rushed outside but initially could not see anything but smoke. She then saw her
husband crawling toward the house and she assisted him inside. Taylor died at the hospital
approximately forty minutes later of internal bleeding caused by two gunshot wounds to the
midsection-one which injured rib, liver, colon, and small intestine; and another which

injured rib, spine, and diaphragm. Both wounds were of the type "generally associated with a high index of pain," and each wound was caused by a .38 caliber bullet.

The **State** presented an inmate at the Shelby County jail, who testified that he and Defendant were members of a gang called the Traveling Vice Lords (TVL). The witness **stated** that the gang was controlled by Charles Thompson, also incarcerated in the jail, and that members of the gang receive elevated rank and status by following Thompson's orders

This witness also testified that on the day of Sergeant Taylor's murder, Charles Thompson and another TVL member engaged in a fight with two other inmates prior to Sergeant Taylor's shift. All prisoners were "locked down" in their cells at 1:00 p.m. that day, as is usual practice during a shift change; but when Sergeant Taylor began his shift, the inmates remained locked down because of the earlier fight. Once released from lock-down, TVL leader Thompson argued with Sergeant Taylor about the extended confinement and repeatedly declared, "You don't know who the f_ _k I am."

**\*2** According to the witness, Thompson telephoned "Verico"[1] following the argument and asked why Sergeant Taylor had not yet been killed, calling Taylor by name and **stating** angrily,

What's the mother-f_ _king hold-up? Why can't you do what the f_ _k I tell you to do?

...

When I tell you to kill the mother f_ _ker that's what I mean, not tomorrow, when I say it.... [Y]'all right over there with him and y'all can't get the mother f_ _ker.

...

I want to hear about it on the news tomorrow.

The witness also testified,

I didn't understand what was going on for the fact he had just got in an argument with the man, and then he hop on the phone. So when he was telling-when he was saying all this, later on when we got locked down I was in my cell I said to myself they must have already been planning to kill the man because the argument just happened....

Finally, this witness agreed on cross examination that if a member of the TVL gang failed to do what Thompson ordered, the person might be hurt or killed.

The **State** presented another witness who testified about events on the same day outside the jail. The witness was present when Verico Jackson received a telephone call, which he answered in a back room alone. At this location-the witness saw only a couple of streets from Sergeant Taylor's residence-the witness saw several weapons, including a .25, .38, an SKS with a long clip, and a .22 with a scope. When the phone call concluded, Verico called Defendant, Rory Haywood, and "Cookie Monster," another TVL member, into the back room. The four gang members and others present, including the witness, left this house and Verico said, "Let's go gang-banging." Defendant, Verico, Rory, and "Cookie Monster" drove away in a car; and the witness saw the car stop on Sergeant Taylor's street. "Cookie Monster" obtained the SKS and the .38 from under the hood of the car and handed the .38 to Defendant. The two then walked away, leaving Rory in the driver's seat. About five minutes later, the witness heard "a lot of gunshots"-specifically, "about three regular gunshots ... a lot of loud gunshots and then some more like quieter gunshots." Later, the witness heard Verico thank Defendant "for taking care of their business," and Defendant **stated**, "[T]hat whore-ass nigger shouldn't have got my nigger jumped on."

Following his arrest, Defendant made a voluntary statement in which he validated the above facts, except that Charles Thompson had called on April 18 with the order to murder Sergeant Taylor. Defendant **stated** that Verico told him killing Taylor was "Nation Business," and when Defendant tried to "punk out and not do[ ] it," Verico told him that he must do it because it was Nation Business. Defendant came back to the house the next day, they discussed the plan as early as 2:00 p.m., and they carried out the plan the evening of April 19 at approximately 10:40 p.m., after waiting for Taylor to arrive at his home. Then, according to Defendant,

*3 "Cookie Monster" said, go on. So I walked up in back of Sergeant Taylor. He was out of the car. I said, hey. And Sergeant Taylor looked at me, and I fired three or four times toward Sergeant Taylor holding the gun gangster style (meaning the gun was turned toward the side instead of the traditional firing of the gun; it was turned toward the side).

I turned and ran along the path to where "Cookie Monster" was with Rory. And "Cookie Monster" had the AK, and Rory had the .25 automatic. And I passed the .38 to Rory. As I was running toward Kansas [Street] and "Cookie Monster" started firing the AK as I was running. I ran up on Kansas ... and Rico came out and asked if the job was done. And I said, yeah.

At approximately 2:00 a.m., after the shooting, Defendant and others started smoking [marijuana] and celebrating." No one was "promoted" within the gang, but Defendant heard rumors that Charles Thompson intended to pay him for the murder.

Later in his statement, Defendant said he wanted to tell Sergeant Taylor's wife that he was sorry for what happened and that he "did not shoot her husband." In addition,

I didn't have no choice but to do what they thought I did 'cause they said-they-if I didn't they would go to my family or they would shoot me right there. I was in fear of my life and my family's life if I didn't participate in this act.

I.

Defendant's first argument is that he lacked the specific intent for first-degree murder and, therefore, could only have been convicted of second-degree murder. He contends that the defense of duress applies to negate his intent to kill because he feared for his life and the life of his family at the time he committed the offense. We read Defendant's argument as presenting two separate but related assertions: First, the trial judge as a matter of law should have excluded first-degree murder from the jury's purview. Second, a jury could not have concluded that Defendant was guilty of first-degree murder.

We examine the second assertion first and conclude that the **State** presented sufficient evidence to support his conviction by the jury. "[F]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App. P. 13(e). Conversely, therefore, a jury verdict should stand so long as the evidence is sufficient to support the finding of guilt beyond a reasonable doubt. Defendant's conviction destroyed his presumption of innocence and instated a presumption of guilt in its place. See *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173, 176 (Tenn.1963); see also *State v. Evans*, 838 S.W.2d 185, 191 (Tenn.1992) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1976), and *State v. Brown*, 551 S.W.2d 329, 331 (Tenn.1977)); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982); *Holt v. State*, 210 Tenn. 188, 357 S.W.2d 57, 61 (Tenn.1962).

*4 Upon examination of the record, it is apparent that some discrepancies exist between the testimony of the State's witnesses and Defendant's statement concerning what day Charles Thompson made the telephone call "ordering" Sergeant Taylor's assassination. This Court must resolve any conflicts in testimony in favor of the jury verdict. See *Tuggle*, 639 S.W.2d at 914. However, with respect to the issues presented by the conflict, Defendant's statement actually tends to show greater premeditation and less coercive influence, in support of the State's case.

In this case, the **State** provided ample evidence by which a jury could find that Defendant acted with the requisite mens rea to commit first-degree murder. By Defendant's own statement, the gang decided to murder Sergeant Taylor on April 18, 1996. Members discussed what weapons they would use and planned a course of action. Defendant **stated** that he went home on the evening of April 18 and returned midday on April 19, when he and others discussed the murder again and prepared to ambush Sergeant Taylor when he arrived home from work. Defendant **stated** that he then walked toward Taylor and immediately shot at him three or four times.

Furthermore, the jury was entitled to find Defendant guilty of first-degree murder despite his argument that the murder was committed under the duress of believing that the TVL gang would kill him or his family in retaliation for failing to carry out "Nation Business." As defined by the legislature and charged by the trial court,

Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily

injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

Tenn.Code Ann. § 39-11-504(a). Here, the evidence as recounted above demonstrates the lack of a present, imminent, impending, and continuous threat of harm. At best, the jury was presented a generalized apprehension that Defendant or Defendant's family might have been hurt somehow, at some unknown point in the future. Even if the jury found a satisfactory threat of harm, it was certainly entitled to conclude that the desirability of avoiding gang retaliation did not outweigh the harm of killing Sergeant Taylor.

Having so concluded, we also find that the trial judge was under no duty to withdraw the charge of first-degree murder in favor of lesser-included homicide offenses. Prior to exercising the function of thirteenth juror, a trial judge may weigh the evidence only (1) to determine whether the State has proffered sufficient evidence, as a matter of law, for the jury to consider the charge, and (2) to determine whether a defendant has proffered sufficient evidence, as a matter of law, for the jury to consider the defense.[2] See, e.g., State v. Underwood, 669 S.W.2d 700, 702-03 (Tenn.Crim.App.1984) ("The defendant's defense of alibi presented a factual issue for the jury to determine."); State v. Crawford, 635 S.W.2d 704, 705 (Tenn.Crim.App.1982) ( "The defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of the credibility of the witnesses in support of that defense, and of the weight to be given their testimony.") (citing Green v. State, 512 S.W.2d 641 (Tenn.Crim.App 1974)).

**\*5** In this case, we have already concluded above that the **State** bore its burden of persuasion; therefore, we must conclude that the **State** bore its burden of production, and that the trial court was correct in allowing the charge of first-degree murder to be decided by the jury.

                                                    II.

We consider Defendant's second and fourth issues together: that the court should have granted his specific jury instruction and that the court improperly instructed the jury on the unavailability of duress as a defense. Generally, a jury charge "should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn.1997) (citing State v. Forbes, 918 S.W.2d 431, 447 (Tenn.Crim.App 1995), and Graham v. State, 547 S.W.2d 531 (Tenn.1977)).

In addition, "[i]t is the duty of a trial judge to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn.1986) (citing State v. Thompson, 519 S.W.2d 789, 792 (Tenn.1975)); see State v. Burkley, 804 S.W.2d 458, 461 (Tenn.Crim.App.1990). This Court also stated in Burkley, "In delivering its charge, a court should guard against an instruction which would withdraw from the jury's consideration any issue or evidence which they are entitled to consider." 804 S.W.2d at 461.

Defendant argues that the trial judge erred in instructing the jury that duress is "unavailable to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion." The offensive instruction, however, is the second tenet of the statutory defense of duress. Tenn.Code Ann. § 39-11-504(b). In order to justly discern when the defense is available and proper, a jury must necessarily know when it is statutorily unavailable to a defendant; and without this instruction, the trial court's charge would not have been a complete and accurate statement of the law.

Defendant also appeals the trial court's failure to grant his request for a specific jury instruction on the defense of duress. Defendant's proposed instruction was submitted as follows:

Ladies and gentlemen of the jury, I further instruct you that in regards to the Law of Second Degree Murder, the defendant may be convicted of the Law of Second Degree Murder if you find from all the proof in the record that the defendant's fear for his life so clouded his judgment that he was incapable of reason and therefore, was incapable of forming the necessary pre-

meditated intent necessary to constitute the Law of Murder in the First
Degree. The difference in Murder in the First Degree and Murder in the
Second Degree is that of pre-meditation. Before a defendant can be
convicted of Murder in the First Degree, he must have the mental capacity,
free from any kind of outside influences, in order to have the capacity to
form the necessary criminal intent pre-requisite to be guilty of Murder in the
First Degree. If you have reasonable doubt that the defendant's mind was
so influenced by fear for his life then you must find the defendant guilty of
only Murder in the Second Degree. (*Pirtle v. State*, 28 Tenn. 663. (1989));
*State v. Keeds*, 753 S.W.2d, 140 (1985); *State v. Adkins*, 653 S.W.2d 708
(1983).

*6 Because Defendant failed to "fairly raise" the issue of his mental capacity, because we
find that his instruction is not a clear and accurate statement of the law, and because the
trial court indeed used an adequate instruction, we conclude that the trial court properly
rejected its inclusion in the charge.

Although it is somewhat unclear, the trial judge in this case assessed that Defendant was,
in essence, arguing diminished capacity by likening his fear of harm to intoxication; and we
will therefore address the issue as such. Our legislature has mandated, and the courts of
this **state** have recognized, that although intoxication is not a defense to prosecution,
evidence of intoxication can negate a finding of specific intent to commit a crime.
Defendant in this case seems to contend that, although he cannot fulfill the requirements of
a statutory defense of duress, evidence of his duress can nevertheless negate his specific
intent to commit murder. We cannot agree.

First, no evidence in the record exists to support a finding that Defendant was "so clouded
[in] his judgment that he was incapable of reason"-in fact, the evidence is wholly contrary.
Second, no court of this **state**, to our knowledge, has extended the doctrine of diminished
capacity to simply a coercive situation, and we decline to do so now. Our legislature has
prescribed, in painstaking detail derived from the common law, precisely when a criminal
defendant can be considered to lack the specific intent to commit an offense due to duress.
*See* Tenn.Code Ann. § 39-11-504. This instruction declares that a criminal defendant
cannot be convicted of first-degree murder even when the apprehension of a threatened
harm is not present, imminent, impending, or continuous. Therefore, Defendant's requested
instruction is not a fair, complete, or accurate statement of the law. Finally, we find the trial
court's instructions on duress and the mental **state** required for first- and second-degree
murder sufficient. When "the matter ha[s] been fully and adequately covered in [the]
general charge," a trial judge possesses the discretion to deny specifically requested
instructions. *Bostick v. State*, 210 Tenn. 620, 360 S.W.2d 472, 477 (Tenn.1962); *see also*
*Edwards v. State*, 540 S.W.2d 641 649 (Tenn.1976) ("It is not error to refuse a special
request where the charge as given fully and fairly **states** the applicable law."); *State v*
*Blakely*, 677 S.W.2d 12, 18 (Tenn.Crim.App.1983). Defendant's second claim of error lacks
merit.

III.

Defendant's next assignment of error is that the court improperly charged the jury that
"absolute certainty" is not required to convict a criminal defendant beyond a reasonable
doubt. The instruction as given reads:

> Reasonable doubt is that doubt engendered by an investigation of all the
> proof in the case and an inability, after such investigation, to let the mind
> rest easily upon the certainty of guilt. Reasonable doubt does not mean the
> doubt that may arise from possibility. *Absolute certainty of guilt is not*
> *demanded by the law to convict of any criminal charge*, but moral certainty
> is required as to every proposition of proof requisite to constitute the
> offense.

*7 (Emphasis added).

Defendant's argument must fail. We have in the past concluded that this instruction is
permissible and that there are no constitutional impediments to its use. *See State v. Willie*
*Taylor*, C.C.A. No. 02C01-9702-CR-00080, Shelby County (Tenn.Crim.App., Jackson, Mar.
10, **1998**); *State v. James Earl Somerville*, C.C.A. No. 02C01-9608-CC-00289, Tipton
County (Tenn.Crim.App., Jackson, Oct. 13, 1997); *see also Pettyjohn v. State*, 885 S.W.2d

364   365-66 (Tenn.Crim.App.1994) (concluding that requiring "moral certainty" was sufficient for due process especially when the concept was differentiated from "absolute certainty" before the jury). We see no reason to deviate from these decisions. Absolute certainty is tantamount to one hundred percent certainty, which the standard of "beyond a reasonable doubt" does not require.

IV

Defendant's final issue for review is whether the trial court erred in advising the jury during the sentencing phase of the trial: "A defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of such sentence." At trial defendant contended that parole eligibility instructions "should not be within the province of the jury" and are prejudicial to the defendant. We reject the argument that a parole eligibility jury instruction is generally unconstitutional in a sentencing hearing. See generally State v. Cribbs, 967 S.W.2d 773 (Tenn.1998).

Unfortunately, the 25-year jury instruction was inaccurate in this case. Although Tennessee Code Annotated § 39-13-204(e)(2) specifically requires that the jury be instructed as to service of "at least twenty-five (25) full calendar years" before being eligible for parole consideration, this statutory calculation is erroneous.

An examination of both Tennessee Code Annotated §§ 39-13-204 and 40-35-501 is necessary. Tennessee Code Annotated § 40-35-501 was amended in 1993 to specifically provide that a defendant with a life sentence will not be eligible for parole until service of "a minimum of twenty-five (25) full calendar years of such sentence." Tennessee Code Annotated § 40-35-501(g)(1)(Supp.1993). Also, in 1993 Tennessee Code Annotated § 39-13-204 was amended to require that the jury be instructed that a defendant receiving a life sentence will not be eligible for parole consideration until the defendant has served "at least twenty-five (25) full calendar years of such sentence." Tennessee Code Annotated § 39-13-204(e)(2)(Supp.1993). It is obvious that the legislature intended that the jury be instructed as to parole eligibility as calculated by Tennessee Code Annotated § 40-35-501.

Effective July 1, 1995, Tennessee Code Annotated § 40-35-501 was amended to deny release eligibility for those convicted of first-degree murder and certain other crimes. Tennessee Code Annotated § 40-35-501(i)(1),(2)(Supp.1995). Only certain sentence reduction credits not to exceed fifteen percent (15%) are allowable. As noted by the **State** Attorney General, for crimes committed after July 1, 1995, minimum release eligibility for a life sentence is fifty-one (51) years and not twenty-five (25) years. See Attorney General Opinion 97-098 (7-1-97). Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.

*8 It immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501. The statutes presently are in conflict, however, it is clear that the legislature intended to change the minimum release eligibility date for a life sentence from twenty-five (25) years to fifty-one (51) years.

The homicide at issue was committed after July 1, 1995. We, therefore, conclude that the trial court erred in informing the jury of the twenty-five (25) year provision instead of the fifty-one (51) year provision. We now examine this error to ascertain whether it was prejudicial to the defendant.

We are unable to conclude that the error was harmless in this case. The jury found that the **state** had established the statutory aggravating circumstance of murder for remuneration. Tenn.Code Annotated § 39-13-204(i)(4). However, it was still within the jury's discretion to sentence the defendant to either life imprisonment or life without parole. Tenn.Code Annotated § 39-13-204(f)(2). At the time of sentencing the defendant was 22 years of age.[3] He would be at least 73 years of age before reaching eligibility for release for a straight life sentence under the fifty-one (51) year provision. The inaccurate jury instruction would allow for possible release at age 47 for a life sentence.

The choice between life without the possibility of parole and life with the possibility of parole is one to be made by the jury under our sentencing statute for first-degree murder. Tenn.Code Annotated § 39-13-204. It is a serious responsibility. This Court is reluctant to substitute our judgment for that of the jury where the jury was provided inaccurate information as to sentencing. In many instances, depending upon the age of the defendant, it would appear a defendant sentenced to straight life under the fifty-one (51) year provision will, as a practical matter, have the same effective sentence as life without parole.

However, in this case we are unable to conclude the jury would still have chosen life without parole if it had been properly instructed. Thus, we cannot apply the harmless error doctrine in this case.

*CONCLUSION*

The conviction is affirmed. The case is remanded to the trial court for resentencing for the offense of first-degree murder.

CONCUR: PAUL G. SUMMERS, and JOE G. RILEY, JJ.

**All Citations**

Not Reported in S.W.2d, 1998 WL 518071

Footnotes

1       Verico Jackson is brother to Mario Jackson, the inmate who joined Charles
        Thompson in the prison fight against two other inmates.

2       Because duress is not an affirmative defense, Defendant was not required to
        prove the defense by a preponderance of the evidence. *State v. Culp*, 900
        S.W.2d 707, 710 (Tenn.Crim.App.1994). He need only have "fairly raised" the
        issue in order to require the trial court to submit the defense to the jury. *Id.;
        see also* **State** v. Scotty S. Davenport, C. C.A. No. 01C01-9611-CR-00477,
        Davidson County (Tenn.Crim.App., Nashville, Feb. 18, **1998**). Because the
        trial court instructed the jury on duress, we need not decide whether
        Defendant actually met his burden of production on the defense.

3       The testimony at the sentencing hearing indicated the defendant was 22,
        whereas the judgment indicates the age of 23.

**End of**                  © 2022 Thomson Reuters. No claim to original U.S. Government Works.
**Document**

WestlawNext © 2022 Thomson Reuters

THOMSON REUTERS
Thomson Reuters is not providing legal advice

Case 1:23-cv-00112-TAV-MJD    Document 1    Filed 05/10/23    Page 40 of 61    PageID #: 40

Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. Preliminary
Materials

Tennessee Practice Series
Tennessee Pattern Jury Instructions—Criminal
September 2020 Update

Preliminary Materials

Preliminary Materials
    Chapter 1. General Opening
Instructions
    Chapter 2. Presumption of
Innocence, Burden of Proof
Reasonable Doubt, Restatement
of Crime Charged, and Alternative
Definitions
    Chapter 3. Criminal
Responsibility
    Chapter 4. Preparatory
Offenses
    Chapter 5. Organized Crime
    Chapter 6. Assault
    Chapter 7. Criminal Homicide
    Chapter 8. Kidnapping, False
Imprisonment and Custodial
Interference
    Chapter 9. Robbery
    Chapter 10. Sexual Offenses
    Chapter 11. Property Offenses
    Chapter 12. Animals
    Chapter 13. Arson and
Related Offenses
    Chapter 14. Burglary,
Vandalism, Criminal Trespass,
and Related Offenses
    Chapter 15. Litter
    Chapter 16. Computer
Offenses
    Chapter 17. Criminal
Instruments
    Chapter 18. Abandonment
and Nonsupport
Chapter 19. Reserved
    Chapter 20. Incest and
Bigamy
    Chapter 21. Offenses
Involving Minors
    Chapter 22. Bribery and
Related Offenses
    Chapter 23. Contraband in
Penal Institutions
    Chapter 24. False
Personation
    Chapter 25. Misconduct
Involving Public Officials
    Chapter 26. Interference with
Government Operations
    Chapter 27. Obstruction of
Justice
    Chapter 28. Perjury
    Chapter 29. Miscellaneous
Offenses against Public Health,
Safety and Welfare
    Chapter 30. Disorderly
Conduct, Riots, Civil Rights
Intimidation and Related Offenses

### PREFACE

The Committee on Pattern Jury Instructions (Criminal) of
the Tennessee Judicial Conference has endeavored to
prepare, revise and update these instructions in conformity
with the requirements of statutory and decisional law in
Tennessee. Additionally, constitutional principles
articulated by the United States Supreme Court have been
incorporated where appropriate. This volume contains
pattern instructions that are easily adaptable to a variety of
cases, whether or not those cases are covered explicitly
by these instructions. By use of footnotes and comments.
the Committee has attempted to provide a ready and
accurate reference to the sources of legal principles
enunciated in these instructions.

The principal purpose for which pattern jury instructions
exist is to help judges communicate more effectively with
juries. As the term "pattern" suggests, however, they are
not intended to provide instructions applicable without
change to every case. Instead, they are meant to provide
judges and lawyers with models of instructions designed to
aid in juror comprehension. These instructions are not
designed to serve as a legal treatise, but rather, to improve
the quality of communication with juries.

Many of the pattern jury instructions contain bracketed
material. Wherever bracketed material appears, whether a
word, phrase, or an entire paragraph, the trial judge should
take special note of that fact. Bracketed language is
optional, so that the language either is to be inserted or
stricken, depending upon the allegations in the indictment
or the evidence adduced at trial. It is imperative that the
trial judge carefully strike material not applicable to the
case. Also, it is strongly urged that pattern jury instructions
referred to in footnotes and comments be examined for the
purpose of deciding whether the additional pattern
instruction should be given to the jury.

We welcome the suggestions of the bench and bar for
improvements or additions to these instructions. The
Committee trusts that this product will promote the fair and
effective administration of justice in the criminal courts of
Tennessee.

Chris Craft, Chair

W. Mark Ward, Vice-Chair

David Allen

Chapter 31. Drugs

Chapter 32. Gambling

Chapter 33. Intoxicating
Liquors

Chapter 34. Obscenity and
Pornography

Chapter 35. Public Events

Chapter 36. Weapons

Chapter 37. Reserved

Chapter 38. Motor Vehicle
Offenses

Chapter 39. Miscellaneous

Chapter 40. Defenses

Chapter 41. Deliberation
Process

Chapter 42. General
Instructions—Evidence and
Guides for Its Consideration

Chapter 43. Concluding
Instructions

Kyle Atkins

Jill Bartee Ayers

Cheryl Blackburn

Carolyn Wade Blackett

David M. Bragg

Wesley Bray

M. Wyatt Burk

John W. Campbell

J. Robert (Bobby) Carter, Jr.

Lee V. Coffee

Sandra N.C. Donaghy

John F. Dugger, Jr.

Forest Durard

David E. Durham

Donald Elledge

Mark J. Fishburn

Dee David Gay

Bill Goodman III

James F. Goodwin

Scott Green

Thomas Clifton Greenholtz

Stella L. Hargrove

Kyle Hixson

Brody Kane

James G. Martin III

J. Weber McCraw

C. Creed McGinley

Gary McKenzie

Jennifer Mitchell

Robert H. Montgomery

Jeff Parham

Donald Parish

Don W. Poole

Lisa Rice

E. Shayne Sexton

Paula Skahan

Jennifer Smith

Christopher Sockwell

Michael Spitzer

Larry Bart Stanley, Jr

Barry Steelman

Stacy L. Street

Paul Summers

Steven Sword

Royce Taylor

Larry J. Wallace

Jeff Wicks

John D. Wootten, Jr.

Jeana D. Hendrix, Reporter

## DEDICATION

I was asked by the Tennessee Criminal Pattern Jury Instructions Committee to author the dedication of this edition to the life of Dickie Jerman. He was my colleague, hunting companion and one of my closest friends. As I told him on many occasions, I loved him like a brother.

Judge Dick Jerman, Jr., known to his friends and colleagues as "Dickie," died in the fall of 1999 after a long fight with cancer. During his multi-year struggle with this dreaded disease, he maintained the most positive attitude imaginable and refused to curtail his professional and social life. His courage touched us all.

Dickie served as the Circuit Judge for the 28th Judicial District, comprised of Gibson, Haywood and Crockett counties, from 1981 until his death. Dickie always did what he thought was "right" and did not want the law to get in his way. He took great pride in being an appellate judge's nightmare! He was undeterred and never apologetic when one of his appellate cases read "Reversed and Remanded." Dickie abhorred anything that he considered to be an injustice.

Although Dickie will always be remembered for his sense of humor and unique style of judging, he was very intelligent. Several months before he died, he asked me to tell all the judges that he "was a whole lot smarter than they thought I was." Indeed he was, although I told him he camouflaged it pretty well.

Dickie served many years on the Tennessee Criminal Pattern Jury Instructions Committee and rendered valuable service. Dickie is, and will continue to be, greatly missed by the entire judiciary. This edition of the Tennessee Criminal Pattern Jury Instructions is dedicated to his memory.

Judge Joe G. Riley, Retired

Tennessee Court of Criminal Appeals

© 2020 by The Tennessee Judicial Conference

T.P.I.—Crim. 7.04(a)First degree murder (fixing punishment of death or life imprisonment or life imprisonment without possibility of...

© Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 7-04(a)

Tennessee Practice Series
Tennessee Pattern Jury Instructions—Criminal
September 2020 Update

Chapter 7. Criminal Homicide

## T.P.I.—Crim. 7.04(a) First degree murder (fixing punishment of death or life imprisonment or life imprisonment without possibility of parole) (for offenses committed on or after July 1, 1995) [2]

Chapter 1. General Opening Instructions

Chapter 2. Presumption of Innocence; Burden of Proof; Reasonable Doubt; Reinstatement of Crime Charged; and Alternative Definitions

Chapter 3. Criminal Responsibility

Chapter 4. Preparatory Offenses

Chapter 5. Organized Crime

Chapter 6. Assault

Chapter 7. Criminal Homicide

T.P.I.—Crim. 7.01. First degree murder (premeditated killing) (for offenses committed on or after July 1, 1995)

T.P.I.—Crim. 7.02. First degree murder (destructive device or bomb) (for offenses committed on or after July 1, 1995)

T.P.I.—Crim. 7.03. First degree murder (killing in perpetration of other crimes) (for offenses committed on or after July 1, 1995)

T.P.I.—Crim. 7.04(a) First degree murder (fixing punishment of death or life imprisonment or life imprisonment without possibility of parole) (for offenses committed on or after July 1, 1995)

T.P.I.—Crim. 7.04.(a) First degree murder (fixing punishment of life imprisonment without possibility of parole) (for offenses committed on or after July 1, 1995)

T.P.I.—Crim. 7.04(c). First degree murder (supplemental instruction when it has been determined the jury is divided on the sentence of death) (for offenses committed on or after July 1, 1995)

T.P.I.—Crim. 7.04(d) Evidence of other [crimes] [bad acts]

T.P.I.—Crim. 7.05(a) Second degree murder (knowing killing of another)

T.P.I.—Crim. 7.05(b) Second degree murder (drug as proximate cause)

T.P.I.—Crim. 7.06. Voluntary manslaughter

T.P.I.—Crim. 7.07. Criminally negligent homicide

T.P.I.—Crim. 7.08(a) Vehicular homicide (reckless conduct)

T.P.I.—Crim. 7.08(b) Vehicular homicide (intoxication)

T.P.I.—Crim. 7.08(c) Vehicular homicide (.08% blood concentration)

T.P.I.—Crim. 7.08(d) Vehicular Homicide (Drag Racing)

T.P.I.—Crim. 7.08(a) Vehicular homicide (Construction Zone)

Members of the Jury, you have now found the defendant guilty beyond a reasonable doubt of murder in the first degree as charged in the [_____] count of indictment number [_____].

It is now your duty to determine, within the limits prescribed by law, the penalty which shall be imposed as punishment for this offense. Tennessee law provides that a person convicted of murder in the first degree shall be punished by death, by imprisonment for life without possibility of parole, or by imprisonment for life. A defendant who receives a sentence of imprisonment for life shall not be eligible for release until the defendant has served at least fifty-one (51) full calendar years of such sentence. [2] A defendant who receives a sentence of imprisonment for life without parole shall never be eligible for release

In arriving at this determination, you are authorized to weigh and consider any of the statutory aggravating circumstances proved beyond a reasonable doubt, and any mitigating circumstances which may have been raised by the evidence throughout the entire course of this trial, including the guilt-finding phase or sentencing phase or both. The jury is the sole judge of the facts, and of the law as it applies to the facts in the case. In arriving at your verdict, you are to consider the law in connection with the facts; but the Court is the proper source from which you are to get the law. In other words, you are the judges of the law as well as the facts under the direction of the Court.

The burden of proof is upon the state to prove any statutory aggravating circumstance or circumstances beyond a reasonable doubt.

Reasonable doubt is that doubt created by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of your verdict. Absolute certainty is not demanded by the law, but moral certainty is required, and this certainty is required as to every element of proof necessary to constitute the verdict. [2]

The law makes you, the jury, the sole and exclusive judges of the credibility of the witnesses and the weight to be given to the evidence.

[The prosecution has introduced what is known as victim impact evidence. This evidence has been introduced to show the financial, emotional, psychological, or physical effects of the victim's death on the members of the victim's immediate family. You may consider this evidence in determining an appropriate punishment. However, your consideration must be limited to a rational inquiry into the culpability of the defendant, not an emotional response to the evidence.

Victim impact evidence is not the same as an aggravating circumstance. Proof of an adverse impact on the victim's family is not proof of an aggravating circumstance. Introduction of this victim impact evidence in no way relieves the State of its burden to prove beyond a reasonable doubt at least one aggravating circumstance which has been alleged. [You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstances has been proven beyond a reasonable doubt by evidence independent from the victim impact evidence, and find that the aggravating circumstance(s) found outweigh the finding of one or more mitigating circumstances beyond a reasonable doubt.] [1]] [2]

### STATUTORY AGGRAVATING CIRCUMSTANCES

Tennessee law provides that no sentence of death or sentence of imprisonment for life without possibility of parole shall be imposed by a jury but upon a unanimous finding that the state has proven beyond a reasonable doubt the existence of one (1) or more of the statutory aggravating circumstances, which shall be limited to the following:

[(1) The murder was committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age or older.]

[(2) The defendant was previously convicted of one (1) or more felonies, other than the present charge, the statutory elements of which involve the use of violence to the person. [The state is relying upon the crime(s) of [_____], the statutory elements of which involve the use of violence to the person.]] [2]

Chapter 8 Kidnapping, False
Imprisonment and Custodial
Interference

Chapter 9 Robbery
Chapter 10 Sexual Offenses
Chapter 11 Property Offenses
Chapter 12 Animals
Chapter 13 Arson and
Related Offenses
Chapter 14 Burglary,
Vandalism, Criminal Trespass
and Related Offenses
Chapter 15 Libel
Chapter 16 Computer
Offenses
Chapter 17 Criminal
Instruments
Chapter 18 Abandonment
and Nonsupport
Chapter 19 [Reserved]
Chapter 20 Incest and
Bigamy
Chapter 21 Offenses
Involving Minors
Chapter 22 Bribery and
Related Offenses
Chapter 23 Contraband in
Penal Institutions
Chapter 24 False
Personation
Chapter 25 Misconduct
Involving Public Officials
Chapter 26 Interference with
Government Operations
Chapter 27 Obstruction of
Justice
Chapter 28 Perjury
Chapter 29 Miscellaneous
Offenses against Public Health,
Safety and Welfare
Chapter 30 Disorderly
Conduct, Riots, Civil Rights
Intimidation and Related Offenses
Chapter 31 Drugs
Chapter 32 Gambling
Chapter 33 Intoxicating
Liquors
Chapter 34 Obscenity and
Pornography
Chapter 35 Public Events
Chapter 36 Weapons
Chapter 37 [Reserved]
Chapter 38 Motor Vehicle
Offenses
Chapter 39 Miscellaneous
Chapter 40 Defenses
Chapter 41 Deliberation
Process
Chapter 42 General
Instructions—Evidence and
Guides for Its Consideration
Chapter 43 Concluding
Instructions

[(3) The defendant knowingly created a great risk of death to two (2) or more persons, other than the victim murdered, during the act of murder.]

[(4) The defendant committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration.]

[(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death.]

[(6) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another.]

[(7) The murder was knowingly committed, solicited, directed, or aided by the defendant, while the defendant had a substantial role in committing or attempting to commit, or was fleeing after having a substantial role in committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, [only for offenses committed on or after 8/15/09: aggravated child abuse, aggravated child neglect, rape of a child, aggravated rape of a child,] aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb. [^1] "Knowingly" means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. [^2] The requirement of "knowingly" is also established if it is shown that the defendant acted intentionally. [^3] "Intentionally" means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result. [^4]]

[(8) The murder was committed by the defendant while [he/she] was in lawful custody or in a place of lawful confinement or during the defendant's escape from lawful custody or from a place of lawful confinement.]

[(9) The murder was committed against any law enforcement officer, corrections official, corrections employee, probation and parole officer, emergency medical or rescue worker, emergency medical technician, paramedic or firefighter, who was engaged in performance of official duties, and the defendant knew or reasonably should have known that such victim was a law enforcement officer, corrections official, corrections employee, probation and parole officer, emergency medical or rescue worker, emergency medical technician, paramedic or firefighter, engaged in the performance of official duties.] [The words "emergency medical or rescue worker, emergency medical technician, paramedic" only apply to offenses committed on or after 7/1/96.] [The words "probation and parole officer" only apply to offenses committed on or after 7/1/08.] [^2]

[(10) The murder was committed against any present or former judge, district attorney general or state attorney general, assistant district attorney general or assistant state attorney general due to or because of the exercise of the victim's official duty or status and the defendant knew that the victim occupied said office.]

[(11) The murder was committed against a national, state, or local popularly elected official due to or because of the official's lawful duties or status, and the defendant knew that the victim was such an official.]

[(12) The defendant committed "mass murder" which is defined as the murder of three (3) or more persons within the State of Tennessee within a period of forty-eight (48) months, and perpetrated in a similar fashion in a common scheme or plan.] [Only for offenses committed prior to May 30, 1997.]

or

The defendant committed "mass murder" which is defined as the murder of three (3) or more persons whether committed during a single criminal episode or at different times within a forty-eight (48) month period.] [Only for offenses committed on or after May 30, 1997.] [^3]

[(13) The defendant knowingly mutilated the body of the victim after death.]

[(14) The victim of the murder was particularly vulnerable due to a significant handicap or significant disability, whether mental or physical, and at the time of the murder the defendant knew or reasonably should have known of such handicap or disability.] [Only for offenses committed on or after July 1, 1997, but prior to July 1, 1998.] [^4]

or

[The victim of the murder was seventy (70) years of age or older, or the victim of the murder was particularly vulnerable due to a significant handicap or significant disability, whether mental or physical, and at the time of the murder the defendant knew or reasonably should have known of such handicap or disability.] [Only for offenses committed on or after July 1, 1998, but prior to July 1, 2011.] [^2]

The defendant, about the same argument on mitigating from reproduce about one more whichever mood by the evidence. [Use this sentence for offenses committed prior to April 29, 1997; for offenses committed after that date, this sentence should be deleted.]

The defendant does not have the burden of proving a mitigating circumstance. There is no requirement of any unanimity as to any particular mitigating circumstance, or that you agree on the same mitigating circumstance.

VERDICT—LIFE IMPRISONMENT OR LIFE IMPRISONMENT WITHOUT POSSIBILITY OF PAROLE

If you do not unanimously determine that a statutory aggravating circumstance has been proved by the state beyond a reasonable doubt, the sentence shall be life imprisonment. You will write your verdict upon the enclosed form attached hereto and made a part of this charge.

The verdict shall be as follows:

We, the jury, unanimously find that the punishment shall be life imprisonment.

If you unanimously determine that a statutory aggravating circumstance or circumstances have been proved by the state beyond a reasonable doubt but that said statutory aggravating circumstance or circumstances have not been proven by the state to outweigh any mitigating circumstances beyond a reasonable doubt, you shall, in your considered discretion, sentence the defendant either to imprisonment for life without possibility of parole or to imprisonment for life. In choosing between the sentences of imprisonment for life without possibility of parole and imprisonment for life, you shall weigh and consider the statutory aggravating circumstance or circumstances proven by the state beyond a reasonable doubt and any mitigating circumstance or circumstances. In your verdict you shall reduce to writing the statutory aggravating circumstance or circumstances so found and shall return your verdict upon the enclosed form attached hereto and made a part of this charge.

The verdict should be as follows:

We, the jury, unanimously find that the state has proven the following listed statutory aggravating circumstance or circumstances beyond a reasonable doubt;

We, the jury, unanimously find that such statutory aggravating circumstance or circumstances do not outweigh any mitigating circumstance or circumstances beyond a reasonable doubt, therefore:

You shall then indicate on the enclosed verdict form either:

We, the jury, unanimously agree that the defendant shall be sentenced to imprisonment for life without possibility of parole:

or

We, the jury, unanimously agree that the defendant shall be sentenced to imprisonment for life.

The verdict must be unanimous and signed by each juror.

VERDICT—DEATH

If you unanimously determine that at least one statutory aggravating circumstance or several statutory aggravating circumstances have been proven by the state, beyond a reasonable doubt, and said circumstance or circumstances have been proven by the state to outweigh any mitigating circumstance or circumstances, beyond a reasonable doubt the sentence shall be death. The jury shall reduce to writing the statutory aggravating circumstance or statutory aggravating circumstances so found, and signify that the state has proven beyond a reasonable doubt that the statutory aggravating circumstance or circumstances outweigh any mitigating circumstances.

You will write your findings and verdict upon the enclosed form attached hereto and made a part of this charge. Your verdict shall be as follows:

(1) We, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances beyond a reasonable doubt:

(2) We, the jury, unanimously find that the state has proven beyond a reasonable doubt that the statutory aggravating circumstance or circumstances so listed above outweigh any mitigating circumstances.

(3) Therefore, we, the jury, unanimously find that the punishment shall be death.

The verdict must be unanimous and signed by each juror.

Take the case, consider all the evidence fairly and impartially, complete one of the three (3) forms, and report your verdict to the court.

Judge

[The victim of the murder was seventy (70) years of age or older, or the victim of the murder was particularly vulnerable due to a significant disability, whether mental or physical, and at the time of the murder the defendant knew or reasonably should have known of such disability.] [Only for offenses committed on or after July 1, 2011.]

[(15) The murder was committed in the course of an act of terrorism.] [Only for offenses committed on or after July 4, 2002.]

[(16) The murder was committed against a pregnant woman, and the defendant intentionally killed the victim, knowing [^] that she was pregnant. A person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim. [^]] [Only for offenses committed on or after July 1, 2010.]

[(17) The murder was committed at random and the reasons for the killing are not obvious or easily understood.] [Only for offenses committed on or after July 1, 2011.] [^]

[(18) The defendant knowingly sold or distributed a substance containing *[fentanyl]* *[carfentanil]* *[insert here any other opiate listed in § 39-17-408(c)]* with the intent and premeditation to commit murder.] [Only for offenses committed on or after July 1, 2019.]

[You are instructed that the word:

"HEINOUS" means grossly wicked or reprehensible; abominable; odious; vile.

"ATROCIOUS" means extremely evil or cruel; monstrous; exceptionally bad; abominable.

"CRUEL" means disposed to inflict pain or suffering; causing suffering; painful.

"TORTURE" means the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious.] [^]

Members of the jury, the court has read to you the aggravating circumstances which the law requires you to consider if you find proved beyond a reasonable doubt. You shall not consider any other facts or circumstances as an aggravating circumstance in deciding whether the death penalty or imprisonment for life without possibility of parole would be appropriate punishment in this case.

## MITIGATING CIRCUMSTANCES

Tennessee law provides that in arriving at the punishment, the jury shall consider as previously indicated, any mitigating circumstances raised by the evidence which shall include, but are not limited to, the following:

[See footnote 17—only include statutory mitigators raised by the evidence.] [^]

[(1) The defendant has no significant history of prior criminal activity. (Conviction of the crime of [_____] is not an aggravating circumstance to be considered in determining the penalty, but a conviction of that crime may be considered in determining whether or not the defendant has a significant history of criminal activity.)]

[(2) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.]

[(3) The victim was a participant in the defendant's conduct or consented to the act.]

[(4) The murder was committed under circumstances which the defendant reasonably believed to provide a moral justification for the defendant's conduct.]

[(5) The defendant was an accomplice in the murder committed by another person and the defendant's participation was relatively minor.]

[(6) The defendant acted under extreme duress or under the substantial domination of another person.]

[(7) The youth or advanced age of the defendant at the time of the crime.]

[(8) The capacity of the defendant to appreciate the wrongfulness of *[his][her]* conduct or to conform *[his][her]* conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected *[his][her]* judgment.]

(9) [_]
[See footnote 18 when drafting nonstatutory mitigators]
[_] [^]

[(10) Any other mitigating factor which is raised by the evidence produced by either the prosecution or defense at either the guilt or sentencing hearing; that is, you shall consider any aspect of the defendant's character or record, or any aspect of the circumstances of the offense favorable to the defendant which is supported by the evidence.] [^]

_____
Date

## PUNISHMENT OF LIFE IMPRISONMENT

We, the jury, unanimously determine that no statutory aggravating circumstance has been proven by the state beyond a reasonable doubt. We, the jury, therefore find that the sentence shall be imprisonment for life.

| | |
|---|---|
| _____ | _____ |
| JURY FOREPERSON | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| | _____ |
| | DATE |

## PUNISHMENT OF IMPRISONMENT FOR LIFE WITHOUT POSSIBILITY OF PAROLE OR IMPRISONMENT FOR LIFE

We, the jury, unanimously find that the state has proven the following listed statutory aggravating circumstance or circumstances beyond a reasonable doubt:

(Here list the statutory aggravating circumstance or circumstances so found, which must be limited to those enumerated for your consideration by the court in these instructions.)

[]
[]
[]
[]

We, the jury, unanimously find that such statutory aggravating circumstance or circumstances do not outweigh any mitigating circumstance or circumstances beyond a reasonable doubt, therefore:

### CHECK ONE (1) BOX ONLY

[ ] We, the jury, unanimously agree that the defendant shall be sentenced to imprisonment for life without possibility of parole; or

[ ] We, the jury, unanimously agree that the defendant shall be sentenced to imprisonment for life.

| | |
|---|---|
| _____ | _____ |
| JURY FOREPERSON | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| _____ | _____ |
| JUROR | JUROR |
| | _____ |
| | DATE |

## PUNISHMENT OF DEATH

(1) We, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances beyond a reasonable doubt:

(Here list the statutory aggravating circumstance or circumstances so found, which must be limited to those enumerated for your consideration by the court in these instructions.)

[]
[]
[]
[]

(2) We, the jury, unanimously find that the state has proven beyond a reasonable doubt that the statutory aggravating circumstance or circumstances so listed above outweigh any mitigating circumstances

(2) Therefore, we, the jury unanimously fix the punishment for the defendant _____ as to [count] _____ shall be death.

JURY FOREPERSON _____   JUROR _____

JUROR _____   JUROR _____

JUROR _____   JUROR _____

JUROR _____   JUROR _____

JUROR _____   JUROR _____

JUROR _____   JUROR _____

DATE _____

## Footnotes

1    This pattern instruction formerly contained the jury charge for First Degree Murder (fixing punishment of death or life imprisonment or life imprisonment without possibility of parole) (for offenses committed on or after November 1, 1989, but prior to July 1, 1995). To obtain that pattern instruction, see T.P.I. 7.04(a) (9th ed. 2005), or an earlier edition.

2    Although T.C.A. § 39-13-204(e)(2) requires that "the jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of such sentence," the Committee feels that this charge should not be given, as it is no longer a correct statement of the law. T.C.A. § 40-35-501(i) was enacted effective July 1, 1995, which set release eligibility for Murder in the First Degree at 100%, but allowed up to 15% sentence credits earned and retained. T.C.A. § 40-35-501(h) had previously set release eligibility for a life sentence at 60% of 60 years, less sentence credits earned and retained. Since these two sections of § 40-35-501 are in direct conflict, it is the opinion of the Attorney General that that portion of section (h) in conflict with the new legislation has been repealed by implication. See Attorney General Opinion 97-098. The earliest possible release date for life imprisonment would therefore be 51 years (60 years at 100% less 15% sentence reduction credits earned and retained). Charging the higher release eligibility of 51 years for a life sentence would also tend to benefit the defendant, and would be less likely to be held reversible error than the figure of 25 years.

3    State v. Hall, 976 S.W.2d 121, 170-171 (1998), cert. denied, 626 U.S. 1089, 119 S.Ct. 1501, 143 L.Ed.2d 654 (1999), as modified by State v. Rimmer, 250 S.W.3d 12 (Tenn. 2008).

4    The trial judge may wish to remove this language, as it is the opinion of the Committee that "a contradiction exists because the statute provides that the jury shall return a verdict of death upon finding the existence of an aggravating circumstance beyond a reasonable doubt, while the Nesbit instruction allows the jury to consider victim impact evidence only after it has found that at least one aggravating circumstance exists, and that the aggravating circumstance outweighs the mitigating circumstances beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 283 (Tenn. 2002).

5    The Tennessee Supreme Court held that this "instruction should be used in substance in all future capital murder trials where impact evidence has been introduced" in State v. Nesbit, 978 S.W.2d 872 (Tenn. 1998), cert. denied 978 U.S. 872, 119 S.Ct. 1359, 143 L.Ed.2d 520 (1999), which sets out guidelines for the use of such evidence. See also T.C.A. § 39-13-204(c) (Supp. 1998) for statutory authority allowing victim impact evidence, effective July 1, 1998.

6    If the felony is one which can be committed with differing statutory elements, some involving violence and some not (such as robbery or aggravated assault), the trial judge may have to have a hearing pre-trial to determine whether this language or felony can be included. "In determining whether the statutory elements of a prior felony conviction involve the use of violence against the person for purposes of § 39-13-204(i)(2), we hold that the trial judge must necessarily examine the facts underlying the prior felony if the statutory elements of that felony may be satisfied either with or without proof of violence." State v. Sims, 45 S.W.3d 1, 11-12 (Tenn. 2001), cited with a constitutional analysis of this instruction in relation to Apprendi, Ring and Blakely in State v. Cole, 155 S.W.3d 885, 895-905 (Tenn. 2005). In Shepard v. United States, 125 S.Ct. 1254 (2005), the United States Supreme Court

## Biographical Information

**Name:** RANDY JONES

**Birth Date:** 04/28/1966

**TDOC ID:** 00120234

**State ID Number (SID):**

## Physical Characteristics

| | | | |
|---|---|---|---|
| **Sex:** | MALE | **Race:** | WHITE |
| **Height:** | 05' 11" | **Complexion:** | FAIR |
| **Weight:** | 155 lbs. | **Eye Color:** | BROWN |
| **Hair Color:** | BROWN | | |

Image Date: 06/19/2020
Download Image

## Aliases

RANDY LEE JONES, JERRY MEADOWS

## Current Status

Dates may change as additional court documents are received.

| | | | |
|---|---|---|---|
| **Supervision Status:** | INCARCERATED | **Assigned Location:** | BLEDSOE COUNTY CORRECTIONAL COMPLEX |
| **Combined Sentence(s) Length:** | 60 YRS 0 MTHS 0 DAYS | **Supervision/Custody Level:** | MINIMUM RESTRICTED |
| **Sentence Begin Date:** | 09/23/1996 | **Sentence End Date:** | 09/24/2047 |
| **Release Eligibility Date:** | | **Parole Hearing Date:** | |
| | | **Parole Hearing Result:** | |

## Active Tennessee Sentences

Conviction County: 031 GRUNDY,   Case Year: 1997,   Case No: 3016,   Count: 001

| | | | |
|---|---|---|---|
| **Offense:** | FIRST DEGREE MURDER | **Offense Date:** | 11/14/1995 |
| **Sentence Imposed Date:** | 01/11/1997 | **Sentence Type:** | TDOC |
| **Sentence Effective Date:** | 09/23/1996 | **Sentence Length:** | LIFE |

Conviction County: 031 GRUNDY,   Case Year: 1997,   Case No: 3016,   Count: 002

| | | | |
|---|---|---|---|
| **Offense:** | FIRST DEGREE MURDER | **Offense Date:** | 11/14/1995 |
| **Sentence Imposed Date:** | 01/11/1997 | **Sentence Type:** | TDOC |
| **Sentence Effective Date:** | 09/23/1996 | **Sentence Length:** | LIFE |



## Biographical Information

| | |
|---|---|
| Name: | DON EDWARD CARTER |
| Birth Date: | 12/29/1967 |
| TDOC ID: | 00273092 |
| State ID Number (SID): | |

## Physical Characteristics

| | | | |
|---|---|---|---|
| Sex: | MALE | Race: | WHITE |
| Height: | 05' 09" | Complexion: | FAIR |
| Weight: | 160 lbs. | Eye Color: | BLUE |
| Hair Color: | BROWN | | |

Image Date: 06/17/2020
Download image

## Aliases

DON E CARTER

## Current Status

Dates may change as additional court documents are received.

| | | | |
|---|---|---|---|
| Supervision Status: | INCARCERATED | Assigned Location: | BLEDSOE COUNTY CORRECTIONAL COMPLEX |
| Combined Sentence(s) Length: | 60 YRS 0 MTHS 0 DAYS | Supervision/Custody Level: | MINIMUM RESTRICTED |
| Sentence Begin Date: | 03/24/1996 | Sentence End Date: | 03/25/2047 |
| Release Eligibility Date: | | Parole Hearing Date: | |
| | | Parole Hearing Result: | |

## Active Tennessee Sentences

Conviction County: 055 MCNAIRY, Case Year: 1997, Case No: 917, Count: 001

| | | | |
|---|---|---|---|
| Offense: | FIRST DEGREE MURDER | Offense Date: | 01/27/1996 |
| Sentence Imposed Date: | 02/12/1997 | Sentence Type: | TDOC |
| Sentence Effective Date: | 03/24/1996 | Sentence Length: | LIFE |

Conviction County: 055 MCNAIRY, Case Year: 1997, Case No: 917, Count: 002

| | | | |
|---|---|---|---|
| Offense: | FIRST DEGREE MURDER | Offense Date: | 01/27/1996 |
| Sentence Imposed Date: | 02/12/1997 | Sentence Type: | TDOC |
| Sentence Effective Date: | 03/24/1996 | Sentence Length: | LIFE |

## Biographical Information

**Name:** ROBERT MICHAEL WINTERS

**Birth Date:** 06/15/1960

**TDOC ID:** 00325157

**State ID Number (SID):** 793422

## Physical Characteristics

| | | | |
|---|---|---|---|
| **Sex:** | MALE | **Race:** | WHITE |
| **Height:** | 05' 09" | **Complexion:** | FAIR |
| **Weight:** | 173 lbs. | **Eye Color:** | BLUE |
| **Hair Color:** | GRAY OR PARTIALLY GRAY | | |



Image Date: 06/19/2020
Download Image

## Aliases

ROBERT FERRY, ROBERT MICHAEL FERRY, ROBERT WALTERS, ROBERT M WINTERS, ROBERT T WINTERS

## Current Status

Dates may change as additional court documents are received.

| | | | |
|---|---|---|---|
| **Supervision Status:** | INCARCERATED | **Assigned Location:** | BLEDSOE COUNTY CORRECTIONAL COMPLEX |
| **Combined Sentence(s) Length:** | 60 YRS 0 MTHS 0 DAYS | **Supervision/Custody Level:** | MINIMUM RESTRICTED |
| **Sentence Begin Date:** | 05/02/1998 | **Sentence End Date:** | 05/02/2049 |
| **Release Eligibility Date:** | | **Parole Hearing Date:** | |
| | | **Parole Hearing Result:** | |

## Active Tennessee Sentences

Conviction County: 033 HAMILTON, Case Year: 2001, Case No: 231247, Count: 001

| | | | |
|---|---|---|---|
| **Offense:** | FIRST DEGREE MURDER | **Offense Date:** | 04/28/1997 |
| **Sentence Imposed Date:** | 10/04/2000 | **Sentence Type:** | TDOC |
| **Sentence Effective Date:** | 05/02/1998 | **Sentence Length:** | LIFE |

## Biographical Information



**Name:** JOHN AUTHUR BOATFIELD

**Birth Date:** 08/09/1959

**TDOC ID:** 00319189

**State ID Number (SID):**

## Physical Characteristics

**Sex:** MALE      **Race:** WHITE

**Height:** 05' 09"      **Complexion:** FAIR

**Weight:** 170 lbs      **Eye Color:** GREEN

**Hair Color:** GRAY OR PARTIALLY GRAY

Image Date: 06/19/2020
Download Image

## Aliases

JOHN A BOATFIELD, JOHN ARTHUR BOATFIELD

## Current Status

Dates may change as additional court documents are received.

**Supervision Status:** INCARCERATED      **Assigned Location:** BLEDSOE COUNTY CORRECTIONAL COMPLEX

**Combined Sentence(s) Length:** 60 YRS 0 MTHS 0 DAYS      **Supervision/Custody Level:** MINIMUM RESTRICTED

**Sentence Begin Date:** 07/09/1998      **Sentence End Date:** 07/09/2049

**Release Eligibility Date:**      **Parole Hearing Date:**

     **Parole Hearing Result:**

## Active Tennessee Sentences

Conviction County: 033 HAMILTON,   Case Year: 2000,   Case No: 222129,   Count: 000

**Offense:** FIRST DEGREE MURDER      **Offense Date:** 03/12/1998

**Sentence Imposed Date:** 05/03/2000      **Sentence Type:** TDOC

**Sentence Effective Date:** 07/09/1998      **Sentence Length:** LIFE

## Biographical Information

**Name:** HOWARD J. ATKINS

**Birth Date:** 08/24/1983

**TDOC ID:** 00327480

**State ID Number (SID):** 1128600

## Physical Characteristics

| | | | |
|---|---|---|---|
| **Sex:** | MALE | **Race:** | WHITE |
| **Height:** | 06' 01" | **Complexion:** | FAIR |
| **Weight:** | 280 lbs. | **Eye Color:** | HAZEL |
| **Hair Color:** | BROWN | | |

## Aliases

HOWARD JEFFERSON ATKINS

## Current Status

Dates may change as additional court documents are received.

**Supervision Status:** INCARCERATED    **Assigned Location:** NORTHEAST CORRECTIONAL COMPLEX

**Combined Sentence(s) Length:** LIFE    **Supervision/Custody Level:** MINIMUM RESTRICTED

**Sentence Begin Date:** 12/07/2000    **Sentence End Date:**

**Release Eligibility Date:** 12/07/2025    **Parole Hearing Date:**

**Parole Hearing Result:**

## Active Tennessee Sentences

**Conviction County: 084 TIPTON,   Case Year: 2001,   Case No: 3956,   Count: 001**

**Offense:** FIRST DEGREE MURDER    **Offense Date:** 04/06/2000

**Sentence Imposed Date:** 01/26/2001    **Sentence Type:** TDOC

**Sentence Effective Date:** 12/07/2000    **Sentence Length:** LIFE

```
1  based on passion and so forth, but you don't have to
2  state that in that fashion.
3             GENERAL TAYLOR:  No, you have to do
4  that with the indictment.
5             THE COURT:  You have to consider first
6  degree first, because that's the primary charge in the
7  indictment.
8             MR. CROSS:  Also you made the statement
9  twice that the proof did not have to be to an absolute
10  certainty.
11            THE COURT:  That's right.
12            MR. CROSS:  And that seems to me that
13  gives the enhancement to that particular portion of the
14  charge.
15            THE COURT:  That's the standard charge
16  that's been approved by many many cases.  That's the
17  way you state it.  It's right out of the pattern
18  charge.
19            MR. CROSS:  Also, what's the minimum
20  time on parole?
21            THE COURT:  If it's a life sentence he
22  has to serve at least 25 years.
23            MR. CROSS:  Well, see, that's if he's
24  Range I.
25            GENERAL TAYLOR:   There is no range
```

Charge

943

```
 1              (Whereupon, the jury was dismissed.)
 2              THE COURT:  Ladies and gentlemen, you
 3  maybe seated just momentarily.
 4              GENERAL TAYLOR:  I will have your
 5  verdict form.
 6              THE COURT:  These convictions, of
 7  course, are non-bailable, so the defendant will stay
 8  and go on into custody and there is no sentencing
 9  hearing that's required in this verdict, because this
10  verdict establishes the sentence, which is life in
11  prison, which just for those of you that maybe don't
12  understand the significance, life imprisonment is a
13  minimum of 25 years in prison before you can be
14  considered for parole.
15              GENERAL TAYLOR:  There is an issue of
16  concurrent and consecutive.
17              THE COURT:  I understand, but I believe
18  in this situation it would almost have to be a
19  concurrent situation.
20              GENERAL TAYLOR:  Did you want us to go
21  ahead and prepare the judgments now?
22              THE COURT:  Yes, go ahead and do that.
23  Unless there's some argument, I can't imagine what it
24  would be.  That's the verdict of the jury and we're now
25  concluded and we'll be -- do you want take the
```

Verdict

IN THE CRIMINAL/CIRCUIT COURT OF _GRUNDY_ COUNTY, TENNESSEE

Case Number: _3016_ Count#: _I_ Attorney for the State _J. MICHAEL TAYLOR_
Judicial District _12TH_ Judicial Division _____ Counsel for Defendant _PAUL CROSS_
[ ] Retained [X] Appointed [ ] Public Defender

State of Tennessee
vs.
Defendant _RANDY LEE JONES_ Alias _____
Date of Birth _04/28/66_ Sex _M_ Race _W_ SSN _412.35.1874_
From Indictment # _____ Warrant # _____ TDOC # _____ Filed in my office: _____ 19__
TBI Document Control # _____

## JUDGMENT

On the _11_ day of _JANUARY_, 19_97_, the defendant:

[ ] pled guilty       [ ] Dismissed/Nolle Prosequi          Indictment: Class (circle one) 1st  A  B  C  D  E  [X] Felony [ ] Misdemeanor
                      [ ] Remand/Transfer to Other Court     Offense _FIRST DEGREE MURDER_
                      [ ] Retired/Unapprehended Defendant    Amended Charge _____
Is found:                                                    Offense date _11,14,95_ County _GRUNDY_
[X] guilty  [ ] not guilty                                   Conviction offense _FIRST DEGREE MURDER_
[X] jury verdict  [ ] not guilty by reason of insanity       TCA#: _39-14-403_ Sentence-imposed date _01,11,97_
[ ] bench trial  [ ] nolo contendere                         Conviction class (circle one) (1st)  A  B  C  D  E  [X] Felony [ ] Misdemeanor

**JUDGMENT**
**Count I.** After considering the evidence, the entire record, and all factors in T.C.A. Title 40, Chapter 35, all of which are incorporated by reference therein, the Court's findings and rulings are:

**Filed**
**Jan.**
**1997**

[X] Sentence Reform Act of 1989          |  [ ] Pre 1982  Sentence: _____   | Concurrent with:
[ ] Judgmental 20%    [ ] Mitigated 30%  |  [ ] 1st Degree Murder _____     |
[X] Standard 30% Range 1  [ ] Multiple 35% Range 2  | [ ] Sentence Reform Act of 1982 |
**MB**  [ ] Persistent 45% Range 3  [ ] Career 60%  | [ ] 30% Range 2  |
**7B,** [ ] Violent 100%    [ ] Multiple Rapist  | [ ] 35% Range 2  |
**page** [X] 1st Degree Murder  [ ] Child Rapist  | [ ] 40% Range 2  | Consecutive to:
**311**  [ ] Repeat Violent Offender  [ ] School Zone  | [ ] 1st Degree Murder |

Sentenced to:                Sentence Length:
[X] TDOC            _____ Years  _____ Months  _____ Days  _X_ Life  _____ Life Without Parole  _____ Death
                   Mandatory-Minimum Sentence (applicable to T.C.A. 39-17-417, 39-13-513 and 39-13-514 in school zone) _____
[ ] County Jail  [ ] Workhouse   _____ Years  _____ Months  _____ Days  _____ Hours  _____ Week-ends  _____ Periodic: _____
                   Mandatory-Minimum Sentence (applicable to T.C.A. 39-17-417, 39-13-513 and 39-13-514 in school zone) _____
                   _____ % min. svc. prior to program or work release  _____ % min. svc. prior to release (Misdemeanor only)
[ ] Probation      _____ Years  _____ Months  _____ Days  Effective: _____
[ ] Community Based Alternative  _____ Years  _____ Months  _____ Days  _____ Hours  _____ Week-ends
Specify: _____

Pretrial Jail Credit Period: from _09/23/96_ to _01/11/97_  from _/_/_ to _/_/_ or Number of Days: _111_

Court Ordered Fees and Fines:              Restitution:
$_____ Criminal Injuries Compensation Fund   Victim Name _____
$_____ Supervision                    Address _____
$_____ Child Support                  _____
$_____ Court Costs                    Total Amount $_____  $_____ per month
                                           [ ] Unpaid Community Service: _____ Hours _____ Days _____ Weeks _____ Months
$_____ FINE ASSESSED
                                           [X] The Defendant having been found guilty is rendered infamous.

Special Conditions:

_m.B.78_
_P. 311_

_THOMAS W. GRAHAM_                         _01,11,97_
Judge's Name          Judge's Signature    Date of Entry of Judgment

White copy - Criminal Court Clerk
Yellow Copy - TN Dept. Of Corrections - MIS-SMS          _____          _____
Pink Copy - Judicial Council                             Attorney for State Signature (optional)   Defendant's Attorney/Signature (optional)
Goldenrod - JAD

CR-3410 (REV. 09-93)                                                                        RDA-1167

IN THE CRIMINAL/CIRCUIT COURT OF ___Grundy___ COUNTY, TENNESSEE

Case Number: __3016__ Count#: __II__ Attorney for the State __M. Taylor__

Judicial District __12__ Judicial Division _____ Counsel for Defendant __P. Cross__

[ ] Retained [X] Appointed [ ] Public Defender

State of Tennessee
vs.
Defendant __Randy Lee Jones__ Alias _____
Date of Birth __04, 28, 66__ Sex __M__ Race __W__ SSN __412 . 35 . 1874__
From Indictment # _____ Warrant # _____ TDOC # _____
TBI Document Control # _____

**JUDGMENT**

Comes the District Attorney General for the State and the defendant with counsel of record for entry of judgment.

On the __11th__ day of __JANUARY__, 19 __97__, the defendant:

**JUDGMENT COUNT II**

Filed Jan. 11, 1997

M.B. 78, page 312

[ ] pled guilty  [ ] Dismissed/Nolle Prosequi
[ ] Remand/Transfer to Other Court
[ ] Retired/Unapprehended Defendant

Is found:
[X] guilty  [ ] not guilty
[X] jury verdict  [ ] not guilty by reason of insanity
[ ] bench trial  [ ] no contendere

Indictment: Class (circle one) (A) B C D E [X] Felony [ ] Misdemeanor
Offense __First Degree Murder__
Amended Charge _____
Offense date __11, 14, 95__ County __Grundy__
Conviction offense __First Degree Murder__
TCA#: __39-14-4103__ Sentence-imposed date __1, 11, 97__
Conviction class (circle one): (A) B C D E [X] Felony [ ] Misdemeanor

After considering the evidence, the entire record, and all factors in T.C.A. Title 40, Chapter 35, all of which are incorporated by reference herein, the Court's findings and rulings are:

[X] Sentence Reform Act of 1989
[ ] Mitigated 20%  [ ] Mitigated 30%
[ ] Standard 30% Range 1  [ ] Multiple 35% Range 2
[ ] Persistent 45% Range 3  [ ] Career 60%
[ ] Violent 100%  [ ] Multiple Rapist
[X] 1st Degree Murder  [ ] Child Rapist
[ ] Repeat Violent Offender  [ ] School Zone

[ ] Pre 1982 Sentence: _____
[ ] 1st Degree Murder
[ ] Sentence Reform Act of 1982
[ ] 30% Range 1
[ ] 35% Range 2
[ ] 40% Range 2
[ ] 1st Degree Murder

Concurrent with: __Count I, Grundy County Case 3016__

Consecutive to: _____

Sentenced to:
[X] TDOC
[ ] County Jail  [ ] Workhouse

Sentence Length:
___ Years ___ Months ___ Days [X] Life ___ Life Without Parole ___ Death
Mandatory Minimum Sentence (applicable to T.C.A. 39-17-417, 39-13-513 and 39-13-514 in school zone) _____
___ Years ___ Months ___ Days ___ Hours ___ Week-ends ___ Periodic: _____
Mandatory Minimum Sentence (applicable to T.C.A. 39-17-417, 39-13-513 and 39-13-514 in school zone) _____
___% min. svc. prior to program or work release ___% min. svc. prior to release (Misdemeanor only)
[ ] Probation ___ Years ___ Months ___ Days ___ Effective: _____
[ ] Community Based Alternative ___ Years ___ Months ___ Days ___ Hours ___ Week-ends
Specify: _____

Pretrial Jail Credit Period: from ___/___/___ to ___/___/___ from ___/___/___ to ___/___/___ or Number of Days: _____

Court Ordered Fees and Fines:
$_____ Criminal Injuries Compensation Fund
$_____ Supervision
$_____ Child Support
$_____ Court Costs
$_____ FINE ASSESSED

Restitution:
Victim Name _____
Address _____
_____
Total Amount $_____ $_____ per month
[ ] Unpaid Community Service: ___ Hours ___ Days ___ Weeks ___ Months
[X] The Defendant having been found guilty is rendered infamous.

Special Conditions:

m.B. 78
P. 312

__Thomas W. Graham__          __1, 11, 97__
Judge's Name          Judge's Signature          Date of Entry of Judgment

White copy - Criminal Court Clerk
Yellow Copy - TN Dept. Of Commerce - MIS-SMS
Pink Copy - Judicial Council
Goldenrod - Jail

CR-3419 (REV. 09-93)          Attorney for State/Signature (optional)          Defendant's Attorney/Signature (optional)          RDA-1167

82

# DECLARATION OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this 42 U.S.C. 1983 Complaint for Relief, under the penalty of perjury, are true and correct to the best of my knowledge, information and belief.

Signed this the 9th day of May, 2023.

Randy Jones #120234

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this 1983 Complaint for Relief, under the penalty of perjury, are true and correct to the best of my knowledge, information and belief.

Signed this the 9th day of May, 2023.

Don Carter #273092

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this 1983 Complaint for Relief, under the penalty of perjury, are true and correct to the best of my knowledge, information and belief.

Signed this the 9th day of May, 2023.

Robert Winters #325157

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this 1983 Complaint for Relief, under the penalty of perjury, are true and correct to the best of my knowledge, information and belief.

Signed this the 9th day of May, 2023.

John Boatfield #319189

19

## **PROOF OF SERVICE**

We hereby certify that a true and exact copy of this 42 U.S.C. 1983 Complaint and affidavit of verification document has been served on the Defendants by placing them in the prison mailbox and sent by First Class, U.S. Mail, postage prepaid to:

Defendant David R. Esquivell (21459)
Bass, Berry & Sims PLC
150 Third Avenue South Suite 2800
Nashville, TN 37201

Howard Jefferson Atkins #327480
NECX
5249 Highway 67 W.
Mountain City, TN 37683

On this the 9 day of May, 2023.

Randy Jones
Don Carter
Robert Winters
John Beefield



U.S. POSTAGE PAID
FCM LG ENV
CHATTANOOGA, TN
37415
MAY 08, 23
AMOUNT

**$3.66**

R2304W121061-20

UNITED STATES
POSTAL SERVICE

RDC 99

37402

X-RAYED

United States District Court
Eastern District of Tennessee
900 Georgia Avenue
Chattanooga, TN 37402

Randy Jones #120234
BCCX
1045 Horsehead Road
Pikeville, TN 37367